Clyde GRAVETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 28, 1969.

Rehearing Denied Feb. 20, 1970.

Harry B. Miller, Jr., Miller, Griffin & Marks, Courtney F. Ellis, Lexington, for appellant.

John Breckinridge, Atty. Gen., Joseph Famularo, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Clyde Gravett and C. L. Scrivner were jointly indicted under KRS 434.010 on a charge of having embezzled money during the period from January 1, 1958 to January 1, 1967, from Farmers No. 4, Inc., a corporation engaged in operating a tobacco warehouse. The charge was that Scrivner, as an employe of the corporation, converted the money to Gravett's use. The two defendants were tried jointly. The proof was that Scrivner had embezzled a large sum of money from warehouse accounts over the period of years stated in the indictment, and had paid a substantial amount of it to Gravett. The latter's defense was that he had loaned money to Scrivner, each year, for private trading in tobacco, and the payments that Scrivner had made to him represented profits, at the rate of 50 percent, on the loaned money. However, the jury chose to believe that Gravett knew that he was receiving embezzled money. Both Gravett and Scrivner were found guilty, Gravett's punishment being fixed at one year's imprisonment in the penitentiary, and Scrivner's at two years' imprisonment.

We have, here, Gravett's appeal. Scrivner's separate appeal is disposed of in Scrivner v. Commonwealth, Ky., 449 S.W. 2d 419 (this day decided).

The appellant's primary argument is that the trial court erred in overruling motions that the jurors be polled as to whether any of them, in violation of the court's admonitions, had read newspaper accounts of the case published during the trial. We shall state the facts relevant to that issue.

The trial began on May 7 and continued through May 10. After the opening arguments had been completed (on May 7) the court admonished the jury, among other things, that "You will not read any accounts about this trial should any appear in the papers * * *." The admonition was repeated before the noon recess and before the adjournment for the day. On the second day of the trial the full admonition was repeated before the noon recess and before the day's adjournment, and a reminder of the admonition was given the jury before two mid-morning recesses and one mid-afternoon recess. The same occurred on the third day of the trial. The case was submitted to the jury on the morning of the fourth day (May 10) and prior to the noon recess on that day, while the jury was still in deliberation, the court admonished the jurors not to *read any newspapers*. The verdict was returned on the afternoon of the fourth day.

The trial was in Lexington, which has a morning paper, the Herald, and an afternoon paper, the Leader. In its May 7 issue the Leader carried an account of the case, in an article starting in the lower left portion of the front page. The article had potentially prejudicial aspects in that it mentioned the fact that on a previous trial of Gravett and Scrivner on the same charge a mistrial had been declared by the court because a witness had made an "inadmissible and prejudicial" statement to the effect that Gravett knew that Scrivner "had been in trouble on an embezzling charge before." On the morning of May 8 counsel for the defendants moved that the jurors be polled as to whether they had read the article in the Leader. The court overruled the motion, on the ground that he would assume that the jurors had obeyed his admonitions.

Later in the day on May 8 two jurors were observed to have newspapers in their possession. The observation did not disclose clearly what papers they were, but one observer thought one of the papers was the Herald. Again a motion for a poll was made and overruled.

In the May 9 issue of the Leader another story was carried on the case, beginning in the middle of the front page, and it mentioned that Scrivner "had been previously convicted of embezzlement." On the morning of May 10 a motion was made for a poll of the jurors concerning their reading of this story, and again the motion was overruled.

Finally, while the jurors were in recess of their deliberations, for lunch, it was discovered that one of the jurors had taken into the jury room the May 10 issue of the Herald. It contained a story about the case but nothing that reasonably could be classed as prejudicial. For the fourth time a motion to poll the jurors was made and overruled.

The question of when jurors should be polled as to whether they have read newspaper accounts of the case is one that is receiving more and more attention. A 1951 annotation on the question, in 15 A.L.R.2d 1152, listed only seven cases. But in 1965 the Later Case Service for that annotation listed some 16 cases, and the 1969 supplement lists 21 more. The question also has been given attention in the proposed "Standards Relating To Fair Trial and Free Press" recommended by the American Bar Association's Advisory Committee on Fair Trial and Free Press, Section 3.5(e), (f), pages 12, 13, 144 to 147.

From our study and evaluation of the decisions of other courts on the subject, as collated in the annotation services above cited, we have concluded that the best rule is that the trial court must be allowed considerable discretion as to whether the jurors should be polled concerning their having read newspaper accounts of the case in violation of the court's admonitions, and that where the admonitions have been adequate in content and frequency the decision of the trial court not to poll the jurors will not be disturbed on appeal, unless perhaps the newspaper material is of a highly prejudicial nature, and has been so prominently displayed that it would have been difficult for the jurors to refrain from seeing it. The trial judge is best qualified to weigh the possibilities of his admonitions having been disobeyed, by his knowledge and observation of the community and of the jurors.

Applying the above rule to this case we find no abuse of discretion by the trial judge in refusing to poll the jury. His admonitions were plain and frequent. There was no showing that the jurors were subscribers to the Leader or otherwise presumably had reason to have had it in their possession. The only papers shown to have been in possession of jurors were issues of the Herald, which contained nothing calculated to be prejudicial.

The appellant argues that the admonitions were not adequate, in that their direction to the jurors not to read any "ac-

counts about this trial" might have been interpreted by the jurors to mean that they could read about the *facts of the case* so long as the account did not deal with the *trial* as such. We are not persuaded of this. We think the jurors reasonably must have understood that they were not to read any newspaper stories relating to the case, whether or not dealing specifically with the trial.

We are aware that the rule we are adopting does not conform to the one recommended by the Advisory Committee on Fair Trial and Free Press. That rule would require the court to poll the jurors, on motion of a party, if "it is determined that material disseminated during the trial raises serious questions of possible prejudice." We are not convinced that conditions in Kentucky are such as to require a rule eliminating the trial judge's discretion in this area.

We come now to a consideration of other alleged grounds of error.

The appellant argues that there was a failure of proof that Farmers No. 4 was a corporation during all the years when the embezzlement was taking place. We think the evidence was sufficient. The secretary testified that Farmers No. 4 "is a Fayette County corporation" and that "its" place of business "during the years in question" was in Lexington. In addition, the president testified that he was the president and had been for about five years. This testimony reasonably imports the company's existence as a corporation for the period in question.

The appellant's third and last claim of error relates to the closing argument of the Commonwealth's attorney. To sustain the proposition that Gravett must have known that the money he was receiving from Scrivner was embezzled money, the Commonwealth's attorney argued, using diagrams, that Gravett made a profit of more than $45,000 on an investment of only $1,866 (the amount which was ad-vanced by Gravett to Scrivner when their dealings first began). The appellant maintains that this argument was improper, unfair, and without support in the evidence, because it disregarded the fact that each year Gravett had advanced new funds to Scrivner, wherefore, says the appellant, the profit was no more than $18,000. The predicate of the Commonwealth attorney's argument was that the money advanced by Gravett each year was part of the money that he had received as profits from Scrivner the previous year, so that Gravett never had advanced out of his independent estate anything other than the original $1,866. We think this was a valid and proper argument.

The judgment is affirmed.

HILL, C. J., and MILLIKEN, NEIKIRK, OSBORNE and STEINFELD, JJ., concur.

REED, J., not sitting.