**443**

Ruby FOSTER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 22, 1974.

Anthony M. Wilhoit, Public Defender, William C. Ayer, Jr., Asst. Public Defender, Frankfort, for appellant.

**444**

Ed W. Hancock, Atty. Gen., Robert W. Willmott, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Justice.

Appellant Ruby Foster was tried for the crime of breaking and entering, KRS 433.-190, together with being an habitual criminal KRS 431.190. A motion that the habitual criminal charge be tried separately from the primary charge was denied. Evidence showed that Foster had been convicted of felonies twice before. The jury, pursuant to an option given to it by the court's instructions, found Foster guilty of the primary offense and of being an habitual criminal. The court fixed his punishment at life imprisonment. He appeals. We affirm.

Sometime after midnight on August 7, 1972, William Stanley, while at home, heard through an intercom system the sound of glass breaking in his store. Armed with a 16-gauge shotgun, he went to investigate. Stanley testified that as he approached the store someone yelled "Here he comes" and then someone came out of the store and " * * * I hollered for him to stop and he shot at me and I shot back at him, * * *." Stanley stated that he saw three people, only one of whom he could identify and that was Clyde Gipson, that he (Stanley) fired three times, and that after the shooting the sheriff was called. He further testified that there was blood on the adding machine and on the counter in his store, but he thought the blood was the result of a cut received when the glass was broken and not from a gunshot wound.

Within a few minutes after the sheriff was called, Deputy Sheriff Carroll arrived at the scene. Carroll testified that the glass in the store's door had been broken and a tire tool from a Ford automobile was by the door and " * * * there was evidence of somebody having been cut." [1] Carroll also testified that about an hour after his arrival he was notified that Foster had been admitted to a hospital and was suffering from gunshot wounds. Carroll went to the hospital where he met Detective Albro. Carroll and Albro saw Foster and both officers testified, without objection, that Foster had buckshot wounds on his right side, from his chest to his back. Foster was advised of his constitutional rights, arrested, and taken to jail. Carroll said that later that day he and Albro went to Foster's mother's house to interview Foster's 11-year-old stepson, James, and they discovered Gipson there. James " * * * had buckshot in his forehead and neck," and Gipson " * * * had a cut on his right forearm, it was a fresh cut and there was bleeding around it."

Detective Albro testified that after they arrived at the jail Foster was searched and a "Winchester Upland Number 5 shot, 12 gauge shotgun shell, loaded" was found. He further testified that after Foster was put in jail he (Albro) went back to the scene and, after talking to Stanley, searched for the gun that was supposed to have been fired at Stanley. A gun containing a spent cartridge was found behind the store and it was introduced into evidence. Albro testified that the spent cartridge was the same make and type as the one found on Foster when he was searched at the jail.

Gipson testified that on the night of the break-in he and Foster were at Foster's brother's house drinking and that Foster left in order to get something else to drink; that James, who was also present, followed Foster, and that he (Gipson) left to try to catch up with James. Gipson stated that as he neared Stanley's store Stanley yelled "halt" at someone and fired, and that he (Gipson) then went back to Foster's brother's house. Gipson testified that he had an old cut on his hand, but it

---

1. Neither the scene nor the tire tool was dusted for fingerprints, nor was the blood tested to determine its type.

was not bleeding that night, and that when he got to Stanley's store he saw no one except Stanley.

Foster testified that he left his brother's house to exchange his shotgun for whiskey and that he took shells with him to show that it worked; that as he and James neared Stanley's store Stanley yelled "halt" and fired, hitting him twice and James once; and that he then loaded his gun and fired. He said that the gun found behind Stanley's store was his; that although he owned a Ford automobile he did not take the tire tool with him that night; and that he did not have any cuts on his hands.

■ Foster's first argument is that the trial court erred in not severing the habitual criminal charge from the primary offense. We held in Stewart v. Commonwealth, Ky., 479 S.W.2d 23 (1972), and other cases cited therein that it is not error to try both charges together. See Hardin v. Commonwealth, Ky., 428 S.W.2d 224 (1968).

■ Foster's next argument is that the court failed to admonish or properly instruct the jury that the purpose of allowing evidence of prior convictions in a trial of this nature is limited to proving the prior convictions and such evidence should not be considered in determining the guilt or innocence of appellant on the principal offense. No admonition was requested, but the court instructed the jury that "You are not to consider defendant's prior felony convictions as indicating that he may have committed the present felony." There was no objection to this instruction and no request for a different or additional instruction. Foster's motion for a new trial did not include this complaint. This contention was not called to the attention of the trial court, therefore it was not properly preserved for appellate review. RCr 9.54. Hartsock v. Commonwealth, Ky., 382 S.W.2d 861 (1964); Murray v. Commonwealth, Ky., 474 S.W.2d 359 (1971).

The next argument is that the evidence was insufficient to sustain the guilty verdict as to the primary offense. We hold that the totality of the evidence supported the verdict. Conover v. Commonwealth, Ky., 473 S.W.2d 825 (1971).

■ Foster argues that the verdict rendered by the jury was so ambiguous and indefinite that it was invalid. It read, "We, the jury, find the defendant guilty Ruby Foster as charged in Count Number 2." Foster claims that it is uncertain whether the phrase "Count Number 2" refers to instruction number 2 or count number 2 of the indictment. Instruction number 2 permitted the jury to find Foster guilty of the primary offense and of being an habitual criminal because of his two prior felony convictions, whereas count number 2 of the indictment charged Foster with being an habitual criminal. Foster argues further that the ambiguity is compounded since the jury did not set a specific sentence as the trial judge had directed. The verdict was one on which the court could enter a judgment. Cf. Smith v. Crenshaw, Ky., 344 S.W.2d 393 (1961). The defect was one of formality. There was no objection when the verdict was read; there was no motion for clarification, and this ground was not presented in the motion for a new trial. Franklin v. Commonwealth, Ky., 490 S.W.2d 148, cert. denied 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed. 2d 108 (1973), said " * * * formal defects in a verdict are waived by the accused's allowing the discharge of the jury without moving the court to recommit the jury for the correction of the verdict." 23A C.J.S. Criminal Law § 1416. Furthermore, this complaint also was not preserved for appellate review.

■ Foster filed a supplemental brief, pro se, in which he claims ineffective assistance of his trial counsel (a different lawyer than the ones prosecuting this appeal.) The trial court was not made aware of this complaint during the trial nor was this contention contained in the

motion for a new trial, therefore this ground was not preserved for appellate review. RCr 9.22. Furthermore, we find that Foster's representation was not " * * * such as to shock the conscience of the court (or) to render the proceedings a farce and a mockery of justice." Cf. Wahl v. Commonwealth, Ky., 396 S.W.2d 774 (1965), cert. denied 384 U.S. 976, 86 S.Ct. 1869, 16 L.Ed.2d 686 (1966).

█ Lastly Foster argues that the evidence fails to sustain a conviction under KRS 431.190, since there was no proof that the second felony and the primary offense with which he was charged were committed progressively after each conviction. There was no motion for a directed verdict and the motion for a new trial does not set forth this ground with sufficient specificity to call it to the attention of the trial court. RCr 10.02. Baldwin v. Commonwealth, Ky., 406 S.W.2d 860 (1966); Jordan v. Commonwealth, Ky., 371 S.W.2d 632 (1963).

The judgment is affirmed.

All concur.