**John Rancy HUFF, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Nov. 18, 1977.

Jack E. Farley, Public Defender, Kevin Michael McNally, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On September 27, 1976, the appellant was indicted by the Fayette County Grand Jury for the intentional murder of Martha Williams (KRS 507.020). A two-day trial, which commenced on January 19, 1977, resulted in the conviction of appellant as charged, and he was sentenced to 20 years' imprisonment. On this appeal appellant argues six alleged errors.

The first two alleged errors are so closely related that the facts relating to both must be considered together in disposing of each of them. First, appellant charges that the trial court erroneously refused to grant him a competency hearing and, secondly, that the trial court erred in not granting him a mistrial or in not permitting him to plead "not guilty by reason of insanity" at the time of the commission of the offense.

At his trial appellant was represented by two counsel. Several days prior to the trial, both of appellant's counsel advised the trial judge that appellant had had a competency examination by Dr. N. H. Sandler and that he was found competent to stand trial. The court was then advised that appellant was ready for trial because Dr. Sandler had given counsel the "okay sign." The trial then proceeded as scheduled. On the second and last day of the trial appellant's counsel advised the court that they had requested and received appellant's medical records from Central State Hospital. The records reflected that appellant was admitted to the hospital on May 22, 1962, at a

time when he was serving a life sentence at the State Reformatory in LaGrange for the murder of his wife. At the time of his admission appellant was diagnosed as "schizophrenic reaction, catatonic type (stuper)." He was released from the hospital and returned to the reformatory on May 31, 1962, with the prognosis of "poor" in regards to future psycotic episodes. With this information brought to the attention of the trial court, appellant moved for a mistrial so that he could make a plea of "not guilty by reason of insanity."

RCr 8.06 provides as follows:

"If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant is insane, the proceedings shall be postponed and the issue of sanity determined as provided by law. If the defendant is found to be insane, the court shall direct that he be confined in a mental institution until his mind is restored, at which time he shall be returned to the court for further proceedings."

Nowhere in the record is it made manifest that appellant was not competent to stand trial. As a matter of fact, the record clearly and unequivocally shows that on January 6, 1977, appellant was found medically competent to stand trial. Counsel for appellant argues that the facts in this case certainly create a reasonable doubt as to appellant's competency at the time of trial. In *Commonwealth v. Strickland,* Ky., 375 S.W.2d 701, 703 (1964), this court discussed the proper test to be applied in determining whether a person is properly fit to plead or defend himself in a criminal proceeding. We said:

"\* \* \* For this purpose, whatever may be the technical classification of his mental state, legally or medically, the test is whether he has substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense."

Being diagnosed as schizophrenic some 15 years before the trial, with no intervening action or conduct of irregularity, is not such reasonable grounds that would put a trial judge on notice that appellant was not competent to stand trial. On the contrary, just two weeks prior to the trial appellant's psychiatric examination disclosed that he had substantial capacity to comprehend the nature and consequences of the proceedings and to participate rationally in his defense. The trial judge was fully advised of this examination and the results thereof. He had the opportunity to view the appellant during the first full day of the trial and to evaluate his conduct. In its order of February 7, 1977, the trial court said, "Again, the Court is unable to find any substantial evidence in this case which would raise a reasonable doubt about the defendant's ability to stand trial or even to continue it." We concur.

As to the second issue, counsel for appellant would have this court believe that there was sufficient showing made to require the trial court to grant a mistrial and to permit the appellant to plead "not guilty by reason of insanity."

KRS 504.050 provides:

"(1) Evidence of mental disease or defect which is offered to show lack of criminal responsibility is not admissible unless the defendant files a written notice of his intention to rely on such defense at least 20 days prior to the day of trial or at such later time as the court may for good cause permit. Upon filing of such notice, the prosecution shall be granted reasonable time prior to trial to move for an examination of the defendant under subsection (2) and to prepare the case for the commonwealth."

The killing of Martha Williams took place on August 12, 1976. The appellant was indicted in September, 1976. Some two weeks prior to the scheduled trial date appellant underwent a psychiatric examination and was found competent to stand trial. On January 19, 1977, four months after the indictment was returned, his trial commenced. Appellant urges, without persuasion, that "the medical records from Central State Hospital raise serious doubts about appellant's sanity." Further discus-

sion of appellant's competency to stand trial or his responsibility for his criminal conduct would only add recognition to the alleged errors, which were and are factually without merit from the very beginning.

■ Appellant's present counsel, who was not his trial counsel, says, "In the alternative, if this Court decides that there was no excuse for the failure of appellant to prepare an insanity defense before trial, appellant would submit that he has been denied the effective assistance of counsel." Suffice it to say that the trial court has not been afforded an opportunity to pass on that question, which has not been presented by an appropriate motion. *Lee v. Commonwealth,* Ky., 547 S.W.2d 792 (1977).

■ Next, appellant complains of the refusal of the trial court to interrogate the members of the jury as to whether any of them had read a current newspaper article relating to his 1961 conviction for the murder of his wife. While the trial jury was deliberating, appellant's counsel requested, and was granted, an in-chambers conference. The record reveals that the following colloquy took place between appellant's counsel and the trial judge:

"THE FOLLOWING PROCEEDINGS WERE HAD AT THE COURT'S CHAMBER WITH COUNSEL FOR BOTH PARTIES PRESENT WHILE THE JURY WAS DELIBERATING:

MR. CHARTERS: Let it be shown that prior to the return of the verdict, in chambers, counsel for defense raised the question that the Lexington Leader printed an article in the afternoon edition noting the fact that the defendant had been convicted of murdering his wife in 1961, a fact which was instrumental in causing the defense not to put the defendant on the stand and that we were informed by a local member of the bar that jurors now serving on this case, but included in the same panel from which this jury was selected, were discussing that prior conviction in the hallway outside the courtroom in which this case was tried and that consequently we have moved the Court to inquire of the jury, if

a guilty verdict is returned, as to whether or not in the course of the trial they received information from any source as to that prior conviction and consequently whether or not that had any effect on their deliberations or verdict.

THE COURT: All right, let me ask you if the information that you've got from that member of the bar indicated that any of the members of that jury panel talked to any of the members of this jury trying this case.

MR. CHARTERS: It did not.

THE COURT: I overrule your motion. (END OF PROCEEDINGS HAD IN CHAMBERS.)"

In *Gravett v. Commonwealth,* Ky., 449 S.W.2d 416, 417 (1970), this court wrote:

"The appellant's primary argument is that the trial court erred in overruling motions that the jurors be polled as to whether any of them, in violation of the court's admonitions, had read newspaper accounts of the case published during the trial."

After stating the facts of the case, we disposed of the issue in this manner:

"From our study and evaluation of the decisions of other courts on the subject, as collated in the annotation services above cited, we have concluded that the best rule is that the trial court must be allowed considerable discretion as to whether the jurors should be polled concerning their having read newspaper accounts of the case in violation of the court's admonitions, and that where the admonitions have been adequate in content and frequency the decision of the trial court not to poll the jurors will not be disturbed on appeal, unless perhaps the newspaper material is of a highly prejudicial nature, and has been so prominently displayed that it would have been difficult for the jurors to refrain from seeing it. The trial judge is best qualified to weigh the possibilities of his admonitions having been disobeyed, by his knowledge and observation of the community and of the jurors.

Applying the above rule to this case we find no abuse of discretion by the trial judge in refusing to poll the jury. His admonitions were plain and frequent. There was no showing that the jurors were subscribers to the Leader or otherwise presumably had reason to have had it in their possession. The only papers shown to have been in possession of jurors were issues of the Herald, which contained nothing calculated to be prejudicial."

In the case at bar, the trial judge had a discretion as to whether polling the jury was necessary to preserve to the appellant a fair trial. He decided that such was not the case. We see no abuse of that discretion.

■ Further, the appellant contends that during the direct examination of Detective James Clifford Latimer, he was permitted to testify, over objection of appellant, regarding oral statements made by appellant during his post arrest custodial interrogation. After counsel's objection, all counsel approached the bench of the court and out of the hearing of the jury counsel for appellant said:

"MR. CHARTERS: Your Honor, I don't know that any of the four of us are aware of an oral statement made by this Defendant. I think that before Detective Latimer proceeds that we ought to hear it out of the hearing of the Jury and see what it is that he's got on his mind.

MR. FAMULARO: I would agree."

Immediately thereafter, an in-chambers conference was held. It disclosed:

"THE FOLLOWING PROCEEDINGS TOOK PLACE IN THE COURT'S CHAMBER ROOM OUT OF THE HEARING OF THE JURY WITH COUNSEL FOR BOTH PARTIES PRESENT:

BY THE COURT: On the record and out of the hearing of the Jury, back in the Court's Chamber, and John will continue to ask, I guess.

MR. FAMULARO: Detective Latimer, I believe we were up to the point where I asked you whether Mr. Huff had made any statements after being advised of his rights, and then I think I further clarified that as to this particular offense. I believe your answer was 'Not as to this particular offense.' Let me at this time ask you basically, since we are out of the presence of the Jury, exactly what statements he did make to you, and additionally whether he made any denial of this particular charge?

DETECTIVE LATIMER: Mr. Huff stated to me that he had been in prison. He stated that he had killed his first wife and that he was guilty of that; he was not guilty of this, and he refused to respond to any questions regarding this incident by flatly refusing to respond.

MR. FAMULARO: So he basically denied this charge, but that denial came after admission of a previous murder and previous incarceration?

DETECTIVE LATIMER: Yes, sir.

MR. FAMULARO: Were those the only statements he made?

DETECTIVE LATIMER: Just general statements, like he would refer to the Bible on questioning if he had anything to do with this incident; Mr. Huff would refer to the Bible. He stated that he could not read. The only written document was the Bible and that's all. I did call his Pastor or Minister and his Minister did come down and no other statements were made to me in regard to this case, either that he did or didn't.

MR. FAMULARO: Anything further, Detective, as to admission as to other offenses?

DETECTIVE LATIMER: No, sir.

MR. CHARTERS: No questions.

BY THE COURT: Are you asking that he be allowed to make that answer, the fact that he said something about denying it? I think the rest of the statement is not responsive. You asked Detective Latimer about this Defendant denying it, and upon further questioning, he referred really to the fact that he could not read. I'm going to let all those go in.

MR. FAMULARO: Did he really quote the Bible as being the only document he

could read? I don't think we could go any further; I'm not sure, but to do so we would be back here.

BY THE COURT: Okay; let's go back and put Jim on the stand. You ask him that question. Jim, you exclude from your answer the first part of that answer, otherwise we will have to try it again. (END OF HEARING IN COURT'S CHAMBERS.)"

The parties returned to the courtroom and to further interrogation of Detective Latimer by the Commonwealth's Attorney. No objection was made to anything that took place at the in-chambers hearing. There is nothing in the record to disclose whether counsel for appellant was satisfied or dissatisfied with the results of the in-chambers hearing. Also, the record does not reflect that the judge admonished the jury in any respect, nor does the record reflect that counsel for appellant sought an admonition of any kind. It is most difficult to affix appellant's argument to any particular testimony of Detective Latimer. His interrogation covers 30 typewritten pages, and the sole and only objection made by counsel for appellant was the one made immediately preceding the in-chambers conference. Counsel for the Commonwealth contends that this issue, if in fact there is one, was not preserved for appellate review. We concur. RCr 9.54; *Brown v. Commonwealth*, Ky., 551 S.W.2d 557 (1977); *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977).

■ The trial judge did not instruct the jury on the "under the influence of an extreme emotional disturbance" defense. Appellant argues that the question of acting under the influence of an extreme emotional disturbance constitutes an element of the offense of murder. Thus he argues that it must be negated by the Commonwealth, the same as other elements of the offense must be affirmatively proven. The record reveals that the court instructed the jury without any help or assistance from counsel for appellant. Counsel did not object to the instructions given, nor did they offer any instructions to be given. The

question has not been preserved for appellate review. RCr 9.54.

■ Lastly, the appellant argues that the trial court erred in permitting Detective Latimer to testify to his unsupported conclusion on how appellant made his escape. In appellant's brief, after characterizing what he conceives to be the Commonwealth's theory of how appellant escaped from the police, counsel writes:

"The only support for this theory is the unqualified and improper opinion expressed by Detective Latimer that appellant's physical appearance when taken to the police station indicated that appellant had been 'running through bushes' and had 'fallen on . . . (his) hand' or had fallen 'through a wire fence or something like that . . .' (T.E., p. 27). There was no evidence introduced at trial which could have possibly led to such a conclusion. Yet, Detective Latimer was permitted to make this bold conclusion. Clearly, this expressed a personal opinion on a conclusion which only could be reached by a juror, if it could be reached at all."

Counsel for appellant therein erroneously refers to T.E. p. 27 in support of his argument. This citation refers only to interrogation by counsel for appellant on his voir dire examination of the jury. It is not on page 27, nor is it on page 72, but the correct page is 227. RAP 1.210(a) requires not only a page reference, but a correct page reference. The testimony was given without objection by anyone. As a matter of fact, Detective Latimer was cross-examined by counsel for appellant in an effort to make it clear to the jury that this statement was only a supposition on the part of the witness. However, not having objected when the testimony was given, appellant cannot now complain. *Foster v. Commonwealth*, Ky., 507 S.W.2d 443 (1974).

The judgment is affirmed.

All concur.