# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 26, 2019
NOT TO BE PUBLISHED

FINAL

DATE *10-22-19* *Bg6 H*

# Supreme Court of Kentucky

2018-SC-000285-MR

JEREMY ANDERSON                                      APPELLANT

V.               ON APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE JOSEPH W. CASTLEN III, JUDGE
NO. 17-CR-00466

COMMONWEALTH OF KENTUCKY                       APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Jeremy Anderson, was convicted by a Daviess Circuit Court jury of two counts of first-degree burglary and being a first-degree persistent felony offender (PFO). Appellant was acquitted on two counts of first-degree wanton endangerment. Following the jury's recommendation, the trial court sentenced Appellant to twenty years' imprisonment (twenty years' imprisonment for each burglary conviction after PFO enhancement, to be served concurrently). This appeal followed as a matter of right. Ky. Const. §110(2)(b). Appellant raises multiple issues: (1) non-unanimous jury, (2) double jeopardy, (3) denial of directed verdict, (4) failure to instruct on voluntary intoxication, and (5) denial of fair trial. For the following reasons, we affirm the trial court.

# I.  BACKGROUND

In the early morning hours of January 7, 2017, Appellant, while under the influence of illegal drugs and armed with a knife, made his way onto the porch of the Pates' residence.  The home was a renovated duplex and had two exterior front doors—one of which opened into the bedroom and the other into the living room.  Mrs. Pate heard someone aggressively knocking on the exterior bedroom door and awakened her husband, Jeremy Pate.  Appellant, also named Jeremy, claimed he heard someone inside saying his name and thought they were talking to him, so he continued to knock.  The exterior bedroom door was not in use and had a gun safe and television in front of it.  Mr. Pate went to the exterior living room door and opened it.  When he could not see the individual knocking at first, he opened the screen door as well.  Mr. Pate did not recognize Appellant.  When Mr. Pate spoke to Appellant, Appellant yelled, "Bitch, you ratted on me!"  As Appellant approached the door where Mr. Pate stood, Mr. Pate closed the screen door and remained inside the residence.

Mr. Pate testified he told Appellant to leave, and then Appellant charged and entered the home, coming inside the living room.  Appellant claimed he and Mr. Pate started fighting at the door because Mr. Pate had a gun.  Appellant also denied entering the residence.  However, both Mr. and Mrs. Pate testified that Appellant entered the living room where the two men fought.  The Pates insist that Mrs. Pate handed her husband the gun during the struggle.

Mr. Pate testified that when he tried to push Appellant back outside, Appellant pulled what Mr. Pate later learned was a knife and advanced toward

2

Mr. Pate, trying to stab him in the face. Mr. Pate grabbed Appellant's hand and the knife spun around, catching Mr. Pate on the inside of his nose. Mr. Pate managed to dislodge the knife and heard it hit the floor. Officers later found blood and Appellant's knife inside the Pates' living room. It is undisputed that the two ended up fighting outside on the porch and into the front yard. At some point, while Mr. Pate and Appellant fought over possession of Mr. Pate's shotgun, Appellant took the gun from him. The Pates maintained that Appellant pointed the gun at them, cycled the bolt, and pulled the trigger several times. However, because the gun was unloaded, the only result was that the gun "dry fired."

According to the Pates' testimony, Mrs. Pate began yelling at Appellant, telling him not to shoot her husband. She also said that she was calling 9-1-1. Appellant then walked toward the house and dry fired the gun at the house in Mrs. Pate's direction. Mr. Pate went after Appellant at that time, pushing him toward the street. Once Appellant was in the street, Mr. Pate ran inside (where Mrs. Pate already was), closed the door, and pulled down the blinds. Mrs. Pate called the police, while Mr. Pate tried to observe Appellant from the window. Sometime later, Appellant, now armed with Mr. Pate's shotgun, approached the house a second time. Mr. Pate told Mrs. Pate to take their children, go into the bathroom, and lock the door. Appellant then pushed the Pates' exterior bedroom door open.

As noted, the exterior bedroom door was blocked by a gun safe and television. Appellant hit the door so hard that he knocked the gun safe down

3

and spun the television around when the door gave way. The resultant angle of the television prevented the door from opening completely, so Appellant was only able to get the shotgun through the doorway. He was then met with resistance from Mr. Pate who ran into the door, slamming Appellant between the door, door facing, and television. Mr. Pate attempted to recover his gun from Appellant, but Appellant retreated. Mr. Pate then slammed the door and placed the safe back in front of it—bracing his shoulder against the safe for approximately thirty seconds before going back to the window to ascertain Appellant's location. Mr. Pate testified that Appellant was still on the porch dry firing the gun in the direction of the doorway. Mr. Pate screamed at Appellant to leave and could hear his wife on the phone with 9-1-1.

Mrs. Pate told the 9-1-1 operator that they needed help—that Appellant had entered their house with a knife and her husband was bleeding. She also told the operator that Appellant had her husband's gun and that Appellant's knife was there in the couple's home. Eventually, Appellant left the Pates' house, and police found him walking down the street with Mr. Pate's shotgun. Appellant immediately complied with the officers and was arrested without incident. Once in the police car, he slammed his head against the cage of the police car and made nonsensical statements. The officers took Appellant to the hospital before taking him to jail.

When Appellant's case went to trial, the jury found him guilty of two counts of first-degree burglary and found him to be a first-degree persistent felony offender. The jury acquitted Appellant on two counts of wanton

4

endangerment. This appeal followed with Appellant advancing five arguments on appeal: (1) burglary instructions failed to differentiate the instances of burglary, (2) double jeopardy barred convictions of both burglary counts, (3) trial court erred in denying Appellant's directed verdict, (4) trial court failed to instruct on voluntary intoxication, and (5) Appellant was denied a fair trial when asked to characterize numerous witnesses as liars.

## II. ANALYSIS

### A. Non-Unanimous Jury

Appellant concedes this issue was unpreserved but requests palpable error review pursuant to Kentucky Rules of Criminal Procedure (RCr) 10.26. "A palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." *Id.*

"[J]uror unanimity means that jurors must agree upon the specific instance of criminal behavior committed by the defendant but they need not agree upon his means or method of committing the act or causing the prohibited result." *King v. Commonwealth,* 554 S.W.3d 343, 352 (Ky. 2018). Essentially, unanimity "mandates the jurors end up in the same place." *Johnson v. Commonwealth,* 405 S.W.3d 439, 455 (Ky. 2013). Furthermore,

> [w]here there are distinct offenses—that is, different criminal acts
> or transactions—lawyers and trial courts must take steps to assure
> the unanimity of the jury and the due process rights of the
> defendant. The most obvious way would be for prosecutors to

5

*charge each crime in a separate count* and then for the trial court to instruct the jury accordingly at trial.

*Id.* (emphasis added).

Here, the Commonwealth charged two separate counts of first-degree burglary, and the jury was instructed on each separate count. Appellant argues, "[t]he burglary instructions used in this case failed to adequately differentiate the alleged instances of burglary." However, the jury had to specifically find different facts to convict under each count. Under the first count, the jury was required to find Appellant "intentionally caused physical injury to Jeremy Pate . . . by striking him with a knife and/or a shotgun . . . ."; whereas under the second count, the jury was required to find "[Appellant] was armed with a shotgun."

"[T]he law requires specific identifiers to be placed in each count in a case involving multiple counts of the same offense." *Harp v.* Commonwealth, 266 S.W.3d 813, 819 (Ky. 2008). *Harp* required "revers[al] because . . . no identifying characteristics requir[ed] the jury to differentiate the specific act constituting each crime." *King*, 554 S.W.3d at 351 (citing *Harp*, 266 S.W.3d 813)

In this case, the jury had specific identifiers of factual conduct included in each count and had to agree on it before convicting Appellant. Appellant injured Mr. Pate during the first burglary when Mr. Pate received the cut in his nose (blood was inside the house at the living room door) or when he and Mr. Pate fought for control of the shotgun outside the house. There was no

testimony concerning an injury during the second burglary. Appellant argues the jury could have considered an injury Appellant inflicted on Mr. Pate while struggling for possession of the shotgun as having been during the second burglary. However, this is not the case. Until Appellant walked away and the Pates returned to their home, this was all part of the first burglary. There was no opportunity for Appellant to form a separate intent (as discussed below) until that time.

Furthermore, we note that both Appellant and the Commonwealth made it very clear to the jury in their closing arguments which burglary each instruction referenced.

We hold the jury instructions properly differentiated between the separate offenses charged, and the trial court did not err.

## B. Double Jeopardy

"[U]nder our longstanding rule, double jeopardy questions may be reviewed on appeal, even if they were not presented to the trial court." *Terry v. Commonwealth*, 253 S.W.3d 466, 470 (Ky. 2007).

"No person shall, for the same offense, be twice put in jeopardy of his life or limb." Ky. Const. § 13. *See also* USCS Const. Amend. 5. "Generally, the prohibition against double jeopardy shields a defendant from a second prosecution for the same offense after either conviction or acquittal, but it also prohibits multiple punishments for the same offense." *McNeil v. Commonwealth*, 468 S.W.3d 858, 866 (Ky. 2015). Further,

7

(1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He *may not . . . be convicted of more than one (1) offense when*:

. . . .

(c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

KRS 505.020 (emphasis added). "KRS 505.020 does not bar the prosecution or conviction upon multiple offenses arising out of a single course of conduct when the facts establish that two or more *separate and distinct attacks* occurred during the episode of criminal behavior." *Kiper v. Commonwealth*, 399 S.W.3d 736, 745 (Ky. 2012) (emphasis added). As such, "for multiple convictions to be proper there must have been a cognizable lapse in [the defendant's] course of conduct during which the defendant could have reflected upon his conduct, [even] if only momentarily, and formed the intent to commit additional acts." *Id.*

In *Welborn v. Commonwealth*, "[t]he defendant shot the trooper three separate times and inflicted three separate wounds," and "[e]ach shot was preceded by a sufficient period of time in which Welborn could reflect on his conduct and formulate intent to commit another act." 157 S.W.3d 608, 612 (Ky. 2005). There, we held there was no double jeopardy violation due to the lapse in the course of the defendant's conduct in order to form the intent to commit the additional acts. In *Kiper*, we held that there was a double jeopardy violation. That case "involve[d] an uninterrupted drive-by shooting," and "the

8

evidence d[id] not support a reasonable conclusion that some of the shots were fired with the intent to wound while others were fired with the intent to kill." 399 S.W.3d at 746.

Here, Appellant broke into the victims' house two separate times. The first time, Appellant unlawfully entered the home with a knife and eventually caused injury to Mr. Pate. After being outside and taking Mr. Pate's shotgun, Appellant walked around outside and even went over to the victim's truck. Mr. Pate went back inside and tried to secure his house, while his wife was on the phone with 9-1-1. After Appellant apparently collected himself, he went back with Mr. Pate's shotgun and tried to force his way through Mr. Pate's other front door. Consequently, Appellant participated in two "separate and distinct attacks" on the victims with "a cognizable lapse" in his course of conduct; as such, double jeopardy did not bar convictions of both burglary counts.

The trial court committed no error on double jeopardy grounds— much less an error that resulted in a manifest injustice under our palpable error standards.

### C. Directed Verdict

Appellant made a motion for a directed verdict at the close of the Commonwealth's case and renewed the motion at the close of all evidence. As is pertinent to this appeal, Appellant's motion for a directed verdict argued generally that the Commonwealth failed to meet its burden of proving each of the charged crimes beyond a reasonable doubt and, specifically, that the trial court should direct a verdict as to one of the burglary counts, as the jury

9

instructions for two counts of burglary based on the same set of facts amounted to a double jeopardy violation. The trial court denied the motion. Appellant now argues that the trial court erred in failing to grant his motion for a directed verdict on first-degree burglary, as "the Commonwealth failed to prove that [Appellant] intended to commit a crime." Appellant bases this claim mostly on the fact that Appellant was too intoxicated to form the requisite "intent to commit a crime" or to "knowingly enter[] . . . a building" as required by the first-degree burglary statute. KRS 511.020(1).

This Court has held that in order to preserve a motion for directed verdict, the motion must not be generic: "[w]e have . . . held that the motion must state specific grounds for relief and should identify which elements of the alleged offense the Commonwealth has failed to prove. Merely moving summarily for a directed verdict or making a general assertion of insufficient evidence is not enough." *Commonwealth v. Jones*, 283 S.W.3d 665, 669 (Ky. 2009). Here, Appellant's general motion for a directed verdict is like that in *Jones*. Both were inadequate to preserve the issue. Unlike in *Jones*, Appellant made a specific claim in the case at bar. However, that claim was based upon double jeopardy—not the intent argument he now raises. Therefore, it also failed to preserve the issue.

While the issue was unpreserved, Appellant requests palpable error review pursuant to RCr 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary

10

error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). The "required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

When reviewing a challenge to a trial court's denial of a motion for directed verdict, this Court construes all evidence in the light most favorable to the Commonwealth. *Jones*, 283 S.W.3d at 668. In doing so, we must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). "It should be remembered that the trial court is certainly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence. Obviously, there must be evidence of substance." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

If we hold that "the trial court did, in fact, err by failing to direct a verdict of acquittal, that failure would undoubtedly have affected Appellant's substantial rights. And, we likewise observe that the trial result necessarily would have been different if the trial court had directed a verdict in Appellant's favor." *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 837 (Ky. 2003). Therefore, if a trial court errs by failing to direct a verdict, such error would be palpable.

11

We hold the trial court did not err in denying Appellant's motion for a directed verdict. The court properly construed "all evidence in the light most favorable to the Commonwealth," *Jones*, 283 S.W.3d at 668, and drew "all fair and reasonable inferences from the evidence in favor of the Commonwealth," *Benham*, 816 S.W.2d at 187.

As to proof that Appellant "knowingly" entered the residence, the Commonwealth presented the testimony of Mr. and Mrs. Pate that Mr. Pate told Appellant to leave before he first pushed his way into the home. Police found a knife, which Appellant admitted was his, inside the home along with blood the Pates testified resulted from Appellant injuring Mr. Pate inside the residence. Then, after injuring Mr. Pate, stealing his shotgun, and being pushed off the home's porch, the Pates testified that he returned and forced entry into the other door to their home. The Commonwealth presented more than a "mere scintilla" of evidence that Appellant knowingly entered the Pates' residence. *Sawhill*, 660 S.W.2d at 5.

The Commonwealth also presented evidence showing that Appellant knew his entry was unlawful. The Pates told him to leave—and he forced entry into the home on both occasions. There was no evidence presented that the Pates invited him into their home at any time.

The fact that Appellant was not so intoxicated as to fail to be able to form the intent to commit these crimes or to know that he was unlawfully entering the Pates' home is born-out by his interactions with police just minutes later. When police told Appellant to stop, put the gun on the ground, and put his

hands behind his back, he complied. Then, later, he repeated to officers, "I'll take the charge." Appellant demonstrated the capacity to know the actions he was supposed to perform—he just chose not to do so when the Pates told him to leave their property and not enter their home.

Appellant also argues that the Commonwealth failed to prove that he intended to commit a crime in the house. However, we have held "[i]ntent may be inferred from actions because a person is presumed to intend the logical and probable consequences of his conduct and a person's state of mind may be inferred from actions preceding and following the charged offense." *Parker v. Commonwealth*, 952 S.W.2d 209, 212 (Ky. 1997) (citing *Wilson v. Commonwealth*, 601 S.W.2d 280 (Ky. 1980); *Davidson v. Commonwealth*, 340 S.W.2d 243 (Ky. 1960); *Claypoole v. Commonwealth*, 337 S.W.2d 30 (Ky. 1960)).

Here, we can infer Appellant's intent from his actions. In his own brief, while denying that he ever entered the Pates' home, he asserts that he and Mr. Pate got in an altercation because Mr. Pate answered the door with a shotgun. He was yelling that one or both of the Pates had "ratted" on him before forcing entry into the home. It is clear that Appellant intended to commit a crime (perhaps assault) when he forced his way into the Pates home.

For these reasons, we affirm the trial court's denial of Appellant's motion for a directed verdict.

### D. Voluntary Intoxication

13

Appellant did not preserve this issue for appeal and requests palpable error review pursuant to RCr 10.26. However, the Commonwealth cites RCr 9.54(2) and asserts palpable error review is not proper since Appellant did not object to the alleged incorrect jury instructions and did not request the trial court give a voluntary intoxication jury instruction. Appellant argues the trial court should have *sua sponte* instructed the jury on voluntary intoxication.

Kentucky RCr Rule 9.54(2) provides:

> *[n]o party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge* by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

(Emphasis added.) "Error may not be assigned regarding instructions unless a specific objection is made stating the grounds for such objection." *Commonwealth v. Duke*, 750 S.W.2d 432, 433 (Ky. 1988). "*Failure to comply with RCr 9.54(2) has consistently been interpreted to prevent review of claimed error* in the instructions because of the failure to preserve the alleged error for review." *Commonwealth v. Thurman*, 691 S.W.2d 213, 216 (Ky. 1985) (emphasis added). *See also Wise v. Commonwealth*, 422 S.W.3d 262, 276-77 (Ky. 2013); *Duke*, 750 S.W.2d at 433; *Davidson v. Commonwealth*, 555 S.W.2d 269, 271 (Ky. 1977); *Huff v. Commonwealth*, 560 S.W.2d 544, 549 (Ky. 1977); *Hopper v. Commonwealth*, 516 S.W.2d 855, 857 (Ky. 1974). "[T]he accused [has a duty] to assure himself that the jury is properly instructed at the time of

14

submission. If the instructions do not meet with his approval, then he must timely offer other instructions or make known to the trial court his objection to those given, together with the grounds supporting his objection." *Hopper*, 516 S.W.2d at 857.

We have held: "Although palpable error under RCr 10.26 may be available for certain kinds of instructional error . . . we now conclude RCr 9.54(2) bars palpable error review for unpreserved claims that the trial court erred in the giving or the failure to give a specific instruction." *Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013). The rule "reflects this Court's recognition that the decision to request a specific instruction or to oppose the giving of a specific instruction is often a matter of individual preference and trial strategy." *Id.* Consequently, the trial court did not err by not giving an unrequested voluntary intoxication jury instruction.

### E. Fair Trial

Appellant asserts he was denied a fair trial when the Commonwealth asked him to characterize witnesses as liars and concedes this issue was not preserved. As such, he requests palpable error review. RCr 10.26.

This Court has stated:

> A witness should not be required to characterize the testimony of another witness, particularly a well-respected police officer, as lying. Such a characterization places the witness in such an unflattering light as to potentially undermine his entire testimony. Counsel should be sufficiently articulate to show the jury where the testimony of the witnesses differ without resort to blunt force.

15

*Moss v. Commonwealth,* 949 S.W.2d 579, 583 (Ky. 1997). "In *Moss,* the prosecutor 'badgered' the defendant into saying the officer was a liar." St. *Clair v. Commonwealth,* 451 S.W.3d 597, 638 (Ky. 2014) (quoting *Moss,* 949 S.W.2d at 583)). Appellant's argument is largely premised on *Moss*; however, this Court held in *Moss,* "Appellant's *failure to object* and our failure to regard this as palpable error precludes relief." *Moss,* 949 S.W.2d at 583 (emphasis added).

Here, as in *Moss,* Appellant did not object to the cross-examination questions. The "blunt force" alleged in this case does not rise anywhere close to the level we held as non-reversible error in *Moss* where the defendant was specifically asked to characterize a well-respected police officer as a liar.

Furthermore, even if this were error, the Commonwealth argues Appellant opened the door to this line of questioning. During his direct examination, defense counsel asked Appellant whether one of the Commonwealth's witnesses was accurate in some of his testimony. Therefore, the first time Appellant characterized a witness's testimony, it was in response to defense counsel's questions during his direct examination.

"'Opening the door,' sometimes referred to as 'curative admissibility,' occurs when one party introduces evidence that 'opens the door' for the other party to introduce equally inadmissible evidence in rebuttal." *Purcell v. Commonwealth,* 149 S.W.3d 382, 399 (Ky. 2004) (quoting *Norris v. Commonwealth,* 89 S.W.3d 411, 414-15 (Ky. 2002)). As such, even if we held the cross-examination questions were improper, Appellant's counsel opened the door to the questions by first having Appellant characterize the

16

Commonwealth's witnesses.  Consequently, we hold Appellant was not denied a fair trial, and no reversal error occurred relating to the cross-examination questions.

## III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and their corresponding sentences.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General