Dennis HOPPER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1974.

---

2. See Smith v. Commonwealth, Ky., 465 S.W.2d 918 (1971), and the Kentucky cases cited therein.

Anthony M. Wilhoit, Public Defender, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

Dennis Hopper appeals from a judgment entered on a jury verdict finding him guilty of voluntary manslaughter and fixing his punishment at ten years' imprisonment. Hopper asserts that reversible error was committed in that the trial court (1) failed to give an involuntary-manslaughter instruction; (2) did not order the Commonwealth to produce statements made by Hopper or direct that they be filed in the record; and (3) failed to discharge the jury because of intemperate remarks made by the Commonwealth's attorney in his closing argument.

Hopper, while drinking beer at a cafe in Newport, met a group of young men including Gene Evans and accompanied them to the apartment of Danny Brammel. On the way to Danny's apartment, they purchased a supply of glue and plastic bags as they intended to engage in a "glue-sniffing" party. When they arrived at the apartment Hopper produced a pistol and placed it under a bed sheet in an adjoining bedroom prior to the commencement of the "glue-sniffing" party. The evidence indicates that the participants wandered in and out of the apartment and that some of them left the party early. In the course of the evening, Gene Evans was shot and

killed with Hopper's pistol. Hopper denies any knowledge of the killing, contending that he "passed out" and when he recovered he was in the apartment alone with Evans who had already been shot. Hopper's pistol was lying on a bed near him. Hopper pocketed the pistol and went outside the building where he hid it under some grass in an adjoining yard. One of the other participants returned and called the police. Hopper was interrogated by the police, and although his story, as related to them, is somewhat confusing, a review of the evidence indicates that Hopper and Evans became engaged in some type of argument in the course of which Hopper became angry, retrieved his pistol, and shot Evans.

The court instructed on voluntary manslaughter. Hopper claims that as there was evidence that he had been waving the pistol in a reckless manner the court should have instructed on involuntary manslaughter as well. Hopper did not object to the instructions, as given, nor did he move the court to further instruct the jury. After the case had been argued to the jury and the court had directed the jury to retire to the jury room to consider its verdict, counsel for Hopper made the following objection:

"On behalf of the defendant, the defense objects to the failure of the court to instruct as to involuntary manslaughter."

It might be well to note that Hopper's trial commenced on March 19, 1974. Effective March 1, 1974, RCr 9.54(2) had been amended to read as follows:

"No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection."

The objection of Hopper came far too late in the course of the trial to preserve this claimed error for appellate review.

Hopper contends that as RCr 9.54(1) places a duty upon the court to instruct the jury on the law of the case it was incumbent upon the court to give an instruction on involuntary manslaughter, even though no effort was made by him to secure such an instruction. Should we follow this line of reasoning, RCr 9.54(2) would become a nullity. The trial court would be charged with the duty of giving instructions covering each and every possible facet of the case with the ever-present danger that the sufficiency of the instructions would be attacked for the first time upon appeal. Elimination of the possibility of this unseasonable delay in attacking the instructions is the very heart of the goal achieved by RCr 9.54(2), as amended. It is now the duty of the accused to assure himself that the jury is properly instructed at the time of submission. If the instructions do not meet with his approval, then he must timely offer other instructions or make known to the trial court his objection to those given, together with the grounds supporting his objection. Hopper failed to observe the mandate of RCr 9.54(2). Consequently, he did not preserve for appellate review any objection to the instructions given by the trial court.

James Michael Cain, a juvenile officer, testified for the Commonwealth at Hopper's trial. Cain and certain police officers had interrogated Hopper on two occasions subsequent to his arrest. A part of the first interrogation was taped but never transcribed. At the time of the second interrogation, a stenographer typed a statement reflecting the results of that inquiry. The typed statement did not contain the questions asked but rather constituted a resume or condensation of the facts adduced. Hopper signed this document, and it was considered to be a confession by the parties.

Counsel for Hopper objected to Cain's testifying because the written statement or confession had not been tendered and offered as a part of the evidence. The trial court did not specifically rule on the motion, but his remarks had the effect of denying the motion. The Commonwealth's attorney used the statement in the course of his examination of Cain. Counsel for Hopper used the statement rather extensively in his cross-examination of Cain in an effort to impeach him. He also elicited from Cain for the first time the fact that there was a taped recording of the first interrogation. This tape had not been produced by the Commonwealth, and no effort had been made to use it during the trial. Cain apparently testified from his recollection of the contents of both the tape and the written statement. Counsel for Cain objected to this testimony because the tape had not been introduced into evidence. However, the Commonwealth's attorney immediately offered to play it to counsel or to the court and jury. Hopper did not elect to permit the jury to hear the tape.

Hopper relies heavily upon Arthur v. Commonwealth, Ky., 307 S.W.2d 182 (1957). He claims that the rule, as pronounced by *Arthur*, required the introduction of the written statement; otherwise, all the testimony given by Cain must be stricken from the record. We do not consider this to be the rule. *Arthur* simply stands for the proposition that a written statement by a defendant in a criminal action must be introduced into the evidence if it is to be used at the trial, and to permit a witness to testify as to the contents of the statement is a violation of the best-evidence rule.

In *Arthur* the county attorney had in his possession a signed confession by the accused which was used in the examination of the witness who had taken the statement. Counsel for Arthur had no prior knowledge of the existence of the statement, and in the course of the trial, the Commonwealth's attorney refused to produce the statement or to let it be examined by counsel for the accused. The circumstances surrounding the written statement of Hopper are entirely different. This statement had been the subject of a rather heated suppression hearing sometime prior to the trial date. Counsel for Hopper had been furnished with a copy of the statement and was fully apprised of all the circumstances surrounding its taking in the course of the suppression hearing. At the trial counsel for Hopper used his copy to cross-examine Cain. If there was any urgency that it be filed as a part of the evidence, then there was no reason why counsel could not have filed the statement as an exhibit in the course of his cross-examination of Cain. We are, therefore, of the opinion that the rule as enunciated in *Arthur* has no application to this case, and, consequently, the failure of the court to require the introduction of the statement did not constitute error.

■ Finally, Hopper claims that he was substantially prejudiced by the failure of the court "to discharge the jury after the Commonwealth attorney in his closing argument pursued a course of action deliberately calculated to improperly influence the jury's decision." We have carefully examined the record and note that at no time during the closing argument of the Commonwealth's attorney did counsel for Hopper interpose any objection. No motion for new trial was filed; therefore, the question of the impropriety of the conduct of the Commonwealth's attorney is raised for the first time in this court. This failure to object at the trial level was fatal to the preservation of this claimed error for appellate review.

The judgment is affirmed.

All concur.