Rodney SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 25, 1979.

Discretionary Review Denied Oct. 23, 1979.

Jack Emory Farley, Public Advocate, C. Thomas Hectus, Asst. Public Advocate, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., John F. Zink, Asst. Atty. Gen., Frankfort, for appellee.

Before HOGGE, LESTER and WILHOIT, JJ.

LESTER, Judge.

Rodney Smith appeals his judgment of conviction for first-degree robbery which imposed a sentence of ten years imprisonment.

Appellant purchased an automobile tire from an operator of a service station, one Elroy Griffin, in McKinney, Kentucky, for the purchase price of $43.95. Some three months later, while traveling through Georgia, the tire blew out and appellant's girlfriend, Virginia Popperwell, the driver at the time, pulled to the side of the road. Upon returning to McKinney, Smith took the faulty tire, still mounted on the rim, to Griffin in hopes of receiving an adjustment. Griffin removed the tire from the wheel and, upon inspection of the interior, made a determination that it had in fact ruptured but thereafter that someone had driven on it after it had flattened. The service station manager then called the tire distributor who advised that if the tire had only blown out, then Smith would be entitled to almost all of the purchase price, but since it had been "run flat", he should only be refunded $22.50. Griffin related the contents of the discussion to appellant and gave him two ten dollar bills, two ones and two quarters. At this point, Smith grabbed the rim, became very angry, shoved the two quarters in Griffin's mouth and threw the wheel to the floor and about the station several times. It is unclear who became physical in the first instance, but Griffin grabbed Smith around the torso, pinning his arms to the side of his body, and evicted him from the building. We cannot determine if appellant was thrown to the ground or merely slipped because of precipitation, but in any event, as he came up from the ground, he pulled a 380 automatic pistol from his pocket, cocked it so that a round was in the chamber, reentered the service station pointing the weapon at Griffin and demanded more money. Griffin complied by giving Smith an additional $22.00. Thereupon, appellant went outside, threw the rim several more times, once damaging an ice cream box, and stepped back inside the building at which time Griffin told him he would give him a new tire. Smith left for Danville.

Later the same day, appellant returned to the service station and without further incident, picked up a new tire, returned $22.00, left and went to his home where he was subsequently arrested. The next day, Smith's brother returned the new tire to Griffin.

At the trial, appellant admitted his basic actions in connection with the incident, including the flourishing of the cocked weapon. However, his explanation for using the weapon at all was that while Griffin had his body pinned, an employee of the station, Foster Azbill, was pulling out his hair and that the gun was necessary for his self-defense. The court gave a self-defense instruction, but Smith's prime contention is that it was error not to give an instruction to the effect that he was acting under a "claim of right to the property," which is a defense to a prosecution for theft. KRS 514.020. In other words, since the commission of or the element of theft has been incorporated into the robbery statute then, Smith argues, so also should the defenses to theft be applicable.

The indictment herein was one for violation of KRS 515.020, which basically proscribes, for the purposes of this appeal, the use of a deadly weapon while in the course of committing a theft, and not theft by unlawful taking pursuant to KRS Chapter 514. The court declined the requested instruction, citing the commentary to the pe-

nal code under the robbery section to the effect:

There was some indication under former law that a person could not commit robbery if he forcibly took property from another under some claim of right. See *Thompson v. Commonwealth*, 13 Ky. 916, 18 S.W. 1022 (1892). It is intended in this chapter that a taking of property by force or threat of force against a person will constitute robbery even though the offender may have some claim to the property.

In its present form, KRS 515.020 is the same as the final draft thereof presented to the legislature. So also is the commentary identical. See Ky.Penal Code, Final Draft (LRC 1971), Commentary to § 1606 at 180.

 We are aware that the penal code is to be liberally construed to effect the objects of the law, KRS 500.030, and that we may use the commentary as an aid in interpreting the code. KRS 500.100. Our present statute is of an entirely new type as compared to former KRS 433.140, and we must look to legislative intent. In spite of the language contained in the commentary to KRS 500.100 expressing the view that what the statutes say is the authoritative statement and the commentary is not, with the latter being only evidence of the considerations that went into the drafting of the statutes, the Supreme Court has written:

At the time the 1974 legislature enacted the penal code it had before it the commentary which explained the scope of this section. In the absence of the legislature having made any change in the language of the section we must *conclusively* presume that it assigned to it the meaning and effect attributed to the language by the 1971 commentary. (emphasis added). *Kennedy v. Commonwealth*, Ky., 544 S.W.2d 219, 221 (1977).

We are not unmindful of Professor Brickey's view contained in her *Kentucky Criminal Law* at § 15.04 when she said:

However, both degrees of robbery are defined in terms of use or threat of force with intent to accomplish a *theft* during the course of *committing a theft*. If the elements of theft are incorporated into the offense of robbery, it would seem only logical that a defense which negates the requisite intent for commission of a theft offense would also be incorporated into the robbery provisions. It is a defense to a prosecution for theft that the defendant acted under a claim of right. The incorporation argument is compelling.

Professor Brickey goes on and comments that in order to eliminate the claim of right defense to robbery, the drafters of the Michigan Revised Criminal Code specifically so provided. See Michigan Proposed Revised Criminal Code (1967) § 3310, Commentary at 259–60. Since the Kentucky Penal Code goes to great lengths throughout its various *sections* to extensively define many of its terms and indulges in great detail on many subjects, we regard the failure to include the specific elimination of the claim of right defense in the robbery statute to be a serious omission on the part of the drafters, or maybe even the true intent of the legislature; but since the commentaries have been elevated almost to the dignity of a statutory enactment, we have no choice but to affirm the circuit court as to its denial of the requested instruction.

 The nonexistence of a claim of right is not an element of theft, but rather the existence of such a claim is a defense to a charge of theft. The legislature has chosen to provide no such defense to a theft which constitutes a robbery.

We make one observation in regard to the objects to be accomplished by the theft and robbery laws. Assuming that we will always have thieves among us, we assume the legislature took the position that if one steals he would be guilty of a class A misdemeanor or a class D felony, but if one steals and uses a weapon in so doing, then the penalty will be far greater, thus reducing potential risks to the lives of victims.

Appellant's attempt to equate the provision of KRS 501.070(1)(a) with his requested instruction upon the defense of "claim of right" to the money taken has no merit in light of what we have said above.

 The final assignment of error concerns itself with the failure of the trial

court to instruct the jury on wanton endangerment or menacing. The transcript of evidence and the record contain no objection as to this point and no offered instructions nor any motion, so the trial court had no opportunity to pass upon appellant's position. The most succinct statement as to failure to preserve an instruction error is found in *Hopper v. Commonwealth*, Ky., 516 S.W.2d 855, 857 (1974):

> Elimination of the possibility of this unreasonable delay in attacking the instructions is the very heart of the goal achieved by RCr 9.54(2), as amended. It is now the duty of the accused to assure himself that the jury is properly instructed at the time of submission. If the instructions do not meet with his approval, then he must timely offer other instructions or make known to the trial court his objection to those given, together with the grounds supporting his objection. Hopper failed to observe the mandate of RCr 9.54(2). Consequently, he did not preserve for appellate review any objection to the instructions given by the trial court.

See also *Mason v. Commonwealth*, Ky., 565 S.W.2d 140 (1978).

The judgment is affirmed.

All concur.