RENDERED: DECEMBER 16, 2010
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Ke}$ **FINAL**

**DATE** 1-6-11 Eli A Grout P.C.

2008-SC-000811-MR

ZELNAR TRAVIS             APPELLANT

V.
     ON APPEAL FROM JEFFERSON CIRCUIT COURT
     HONORABLE GEOFFREY P. MORRIS, JUDGE
     NO. 07-CR-003360

COMMONWEALTH OF KENTUCKY           APPELLEE

AND            2008-SC-000831-MR

WILLIAM DAWSON           APPELLANT

V.
     ON APPEAL FROM JEFFERSON CIRCUIT COURT
     HONORABLE GEOFFREY P. MORRIS, JUDGE
     NO. 07-CR-003360

COMMONWEALTH OF KENTUCKY           APPELLEE

**OPINION OF THE COURT BY JUSTICE NOBLE**

**AFFIRMING IN PART, REVERSING IN PART AND REMANDING**

Appellants Zelnar Travis and William Dawson were both convicted of robbery in the first-degree, possession of a handgun by a convicted felon, possession of a defaced firearm, and being a persistent first-degree felony offender. They were co-defendants and their appeals are being heard together. They appeal their robbery convictions and the related court costs and fines, as

well as their convictions as persistent felony offenders. Finding reversible error in the imposition of court costs and fines, we vacate those penalties, but finding no reversible error in the robbery or persistent felony offender instructions, we affirm their convictions and sentences.

## I. Background

During the early morning hours of August 21, 2007, police received a call about a man who was possibly hurt in downtown Louisville. When police arrived on the scene, they realized that the individual, while not injured, had been robbed at gunpoint in a nearby housing project. The victim, Timothy Humphrey, was able to provide the officers with a detailed description of the two men who had robbed him. Within an hour, officers had located the Appellants near the robbery site. When the police found the two men, they noticed a loaded, semi-automatic handgun in the grass next to a porch on which they were sitting. The weapon was functional, but the serial number had been scratched off.

According to Humphrey, he was walking to a housing project when he noticed Travis and Dawson stalking him. The two men eventually caught up with him, put him on the ground, held a gun to his head, and searched him for valuables. Humphrey stated that the robbers took his wallet and cell phone. At the end of the confrontation, Travis and Dawson walked away and told Humphrey to leave the housing project. When Travis and Dawson were later apprehended by police, Humphrey identified them as the individuals who robbed him.

2

After a four-day trial, Travis was convicted of robbery in the first-degree, possession of a handgun by a convicted felon, possession of a defaced firearm, and being a first-degree persistent felony offender.[1] Travis was sentenced to 20 years on the robbery charge and 8 years on the possession of a firearm charge, with those sentences to run concurrently for a total of 20 years, enhanced to 27 years by the PFO conviction. Dawson was convicted of robbery in the first-degree, possession of a handgun by a convicted felon, possession of a defaced firearm, and being a first-degree persistent felony offender. Dawson was sentenced to 20 years on the robbery charge and 8 years on the possession of a handgun charge, with those sentences to run consecutively for a total of 28 years, enhanced to 35 years by the PFO. The trial court additionally imposed court costs in the amount of $130 and levied a "felony conviction fee" (or fine) of $1000 apiece.

Both Travis and Dawson appeal the final judgment entered as a matter of right. Ky. Const. § 110(2)(b). Their appeals have been consolidated for our review, and each appeal raises a number of errors which we will address as necessary.

## II. Analysis

### A. Imposition of Fine and Court Costs

The Appellants' first assignment of error is the trial court's imposition of court costs and fines. According to the Appellants, these fines were improper

---

[1] Both Travis and Dawson were also charged with, but ultimately acquitted of, criminal trespass in the second-degree.

because the trial court had already recognized their indigent status pursuant to KRS Chapter 31.

Subsection (4) of KRS 534.040 provides that "[f]ines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." Nor may court costs be levied upon defendants found to be indigent. KRS 23A.205(2). At the time of trial, both Travis and Dawson were receiving the services of a public defender, and were granted the right to appeal in *forma pauperis*. They were clearly indigent. Thus, the trial court clearly erred in imposing a fine and court costs upon the Appellants. *See Simpson v. Commonwealth*, 889 S.W.2d 781, 784 (Ky. 1994).

Travis and Dawson concede that this error is not preserved for appellate review. "Nonetheless, since sentencing is jurisdictional it cannot be waived by failure to object." *Wellman v. Commonwealth*, 694 S.W.2d 696, 698 (Ky. 1985). "Thus, sentencing issues may be raised for the first time on appeal and Appellant is proceeding properly before this Court." *Cummings v. Commonwealth*, 226 S.W.3d 62, 66 (Ky. 2007). Fines and costs, being part of the punishment imposed by the court, are part of the sentence imposed in a criminal case. Having the inherent jurisdiction to cure such sentencing errors, this Court vacates the fines and court costs.

### B. Unanimous Verdict

The Appellants contend that they were denied their rights to a unanimous verdict on both their first-degree robbery and persistent felony offender charges. On both counts, the Appellants' argument turns on an alleged defect in the instructions, which they claim deprived them of a

4

unanimous verdict. Before turning to the instructions at issue in this particular case, it is worthwhile to briefly outline the development of our law on this sort of unanimous verdict issue, in light of the fact that these issues have recently been appearing repeatedly.

Toward the end of the 1970s, the Court began to tackle the situation presented in this case, where multiple theories of a crime are presented in a single instruction. See, e.g., *Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky. 1978). Such an instruction has become known as a "combination instruction." *See, e.g., Johnson v. Commonwealth*, 12 S.W.3d 258, 265 (Ky. 1999). *Wells* held that "a verdict can not be successfully attacked upon the ground that the jurors could have believed either of two theories of the case where both interpretations are supported by the evidence and the proof of either beyond a reasonable doubt constitutes the same offense." 561 S.W.2d at 88. In other words, multiple theories of the same offense can be combined so long as there is sufficient evidence of each. This is because, no matter which theory they accepted, all the jurors convicted under a theory supported by the evidence and all the jurors convicted the defendant of the same offense.

This Court addressed the situation where there is insufficient evidence supporting one of the theories in both *Boulder v. Commonwealth*, 610 S.W.2d 615, 617 (Ky. 1980), and *Hayes v. Commonwealth*, 625 S.W.2d 583, 584-85 (Ky. 1981). In each case, the Court found the combined instruction erroneous because it permitted the jury to convict on a theory unsupported by evidence. *See Boulder*, 610 S.W.2d at 617 ("They provided alternative grounds for a finding of guilt-either that John intended to cause serious physical injury to

'Cynthia' or that he was wantonly engaging in conduct which created a risk of death to 'Cynthia.' The state of the evidence, however, is such that it would be clearly unreasonable for a juror to believe that John's conduct was other than intentional."); *Hayes*, 625 S.W.2d at 585.

### 1. Robbery Instructions

With respect to their convictions for first-degree robbery, Travis and Dawson argue that they were denied a unanimous verdict because the instruction permitted a conviction on a theory of robbery not supported by the evidence. The instructions to which Travis and Dawson take issue are the following:

> You will find the defendant, Zelnar Travis [William Dawson], guilty of Robbery in the First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
> (A) That in Jefferson County on or about August 21, 2007 Zelnar Travis and/or William Dawson, acting alone or in complicity with one another, stole or attempted to steal property from Timothy Humphrey;
>
> AND
>
> (B) That in the course of so doing and with intent to accomplish the theft, he and/or William Dawson used or threatened the immediate use of physical force upon Timothy Humphrey;
>
> AND
>
> (C) That in the course of the foregoing Zelnar Travis and/or William Dawson were armed with a deadly weapon—.45 caliber semiautomatic handgun.

Specifically, Travis and Dawson point to the language stating that they "attempted to steal property from Timothy Humphrey," found in part (A) of the

6

instruction. According to both Appellants, the evidence introduced at trial was only that of a completed theft. Therefore, the Appellants contend, allowing the jury to convict them on a theory unsupported by the evidence violated their rights to a unanimous verdict.

The instruction provided to the jury tracks the first-degree robbery statute, detailing the two ways to satisfy the "in the course of committing theft" portion of the statute: stealing property or attempting to steal property. *See* KRS 515.020. As long as the jury finds from the evidence that Travis and Dawson either "stole" or "attempted to steal" property from Humphrey, it is not critical as to which one to find them guilty of first-degree robbery. *Wade v. Commonwealth*, 724 S.W.2d 207, 208 (Ky. 1986). A defendant who uses physical force with the requisite intent is guilty of robbery regardless of whether any of the property intended to be taken is in fact taken. *Kirkland v. Commonwealth*, 53 S.W.3d 71, 76 (Ky. 2001) ("All the evidence indicates that McKee and Kirkland entered the store with a gun in order to steal money from the victim. The robbery was accomplished at this point."). This reflects a change in the law with the adoption of the Penal Code in 1974, which "ma[de] an important change in the traditional robbery offense," KRS 515.020 cmt., by shifting the focus from the theft to the force or threat of force aspect of the crime. "With this change, robbery, as an offense against the person, is emphasized while robbery, as an offense against property, is de-emphasized." *Id.*

The language "in the course of committing theft" thus allows the Commonwealth to prove either that a theft was committed or attempted, based

7

on which act the evidence supports. Theft or attempted theft is the action necessary to make the offense a robbery rather than an assault, and in this manner is an "element" of the offense of robbery rather than a separate offense. The "in the course of" language takes the emphasis in robbery from the property itself, and focuses on actions against a person.

This Court can discern no error by the inclusion of "attempt" language in the jury instructions. There was no evidence or argument that the Appellants did not take Humphrey's wallet and cell phone. The "theory" of robbery through completion of the theft necessarily encompasses the theory that the Appellants attempted the theft as well. This principle is reflected in how, for purposes of double jeopardy, an attempted theft merges with the completed offense. "A person may not be convicted on the basis of the same course of conduct of both the actual commission of a crime and . . . [a] criminal attempt to commit that crime. . . ." KRS 506.110(1)(a). The substantive offense is simply a successfully completed attempt.

Logically, then, all the evidence pertaining to the Appellants' actual taking of property is sufficient to establish their attempt to do so. It is the case, *a fortiori*, that having proved that the wallet and cell phone *were* taken, the Commonwealth also proved the attempt to take them. It is disingenuous to argue that having proved that the property was taken, any member of the jury could possibly instead think that only an attempt to take the property had occurred. But even if some member of the jury did believe such, that belief was sufficient to convict for robbery, even though some of the jurors may have believed there was an actual taking rather than an attempt. Either way, and

8

even with a mixed finding on the taking element, the jury found that the Appellants were guilty of first-degree robbery beyond a reasonable doubt, and there was no lack of unanimity, as either theft or attempted theft satisfies the robbery statute, and the evidence here was sufficient to prove both.

## 2. PFO Instructions

For their final assignment of error, Appellants argue that the first-degree persistent felony offender instruction permitted a conviction on a theory unsupported by the evidence. Specifically, Appellants contend that the Commonwealth failed to produce evidence to support theories set forth in parts five, six, and seven of the jury instructions, in violation of the rule that a criminal conviction must be by a unanimous verdict. At the time the instructions were tendered to the jury, neither Travis nor Dawson made a timely objection. RCr 9.54(2). Since no objection was made to the instructions, the issue of their appropriateness is unpreserved on appeal. *See Hopper v. Commonwealth*, 516 S.W.2d 855, 857 (Ky. 1974).

The PFO instruction to the jury provided, in pertinent part, as follows:

> You will find the defendant, Zelnar Travis, guilty of being a persistent felony offender in the First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt the following:
>
> (1) That prior to August 21, 2007 the Defendant was previously convicted of at least two (2) of the following felony convictions: Theft by Unlawful Taking over $300 by judgment of the Jefferson Circuit Court dated March 1, 1999; Possession of a Handgun by a Convicted Felon by judgment of the Jefferson Circuit Court dated April 19, 2005.

9

(2) That pursuant to at least two (2) of those prior convictions, he was sentenced to a term of imprisonment of one year or more on each;

AND

(3) That he was 18 years of age or older when he committed at least two (2) of the offenses for which he was so convicted;

AND

(4) That the defendant is now more than 21 years of age;

AND

(5) That the defendant completed service of the sentence imposed on at least one of the previous felony convictions within five years prior to the date of the commission of the offenses charged in this indictment;

OR

(6) That the defendant was on a form of legal release from at least one of the previous felony convictions on the date of the commission of the offenses charged in this indictment;

OR

(7) That the defendant was legally released or discharged from at least one of the previous felony convictions within five years of the date of the commission of the offenses charged in this indictment.

The PFO instruction given for William Dawson was identical to the instruction

given to Zelnar Travis, except that paragraph (1) stated:

That prior to August 21, 2007 the Defendant was previously convicted of at least two (2) of the following felony convictions: Possession of a Handgun by a Convicted Felon by judgment of the Jefferson Circuit Court dated July 20, 2001; Escape in the Second Degree by judgment of the Jefferson Circuit Court dated August 18, 2004; Illegal Possession of a

10

Controlled Substance in the First Degree by judgment
of the Jefferson Circuit Court dated September 27,
2004.

Both instructions contain superfluous language. In other words, they contain language describing theories of liability that do not relate to any evidence presented or even alluded to at trial. Instead of serving to aid the jury, such language was simply inserted to reflect the various possible theories of statutory liability, notwithstanding their inapplicability to the instant case.

Specifically, in regard to Travis, the record shows that the Commonwealth failed to produce any evidence to show that he had completed serving his sentence or was legally released or discharged within five years of the underlying robbery. In fact, in most cases, such proof would be impossible, as the time periods laid out by the PFO categories rarely overlap. A person may have completed service of a sentence or have been legally released or discharged (i.e. on probation or parole) within five years of the current offense, or have actually been on probation or parole at the time of the offense, but rarely would more than one category apply. And in this case, there certainly was no evidence that more than one of the categories applied to Appellant. Therefore, the inclusion of parts five and seven in the instruction was superfluous and in error.

In regards to Dawson, the record indicates that the Commonwealth failed to produce evidence to support that he was on some form of legal release at the time of the underlying robbery, or that he was legally released or discharged within five years of the charged offense. Accordingly, the inclusion of parts six and seven was in error as applied to him. *Id.*

11

As noted above, *Boulder* and *Hayes* established that such superfluous instructing on theories insufficiently supported by evidence is error. Twenty years after that pair of cases, this Court held in *Burnett v. Commonwealth*, 31 S.W.3d 878, 883 (Ky. 2000), that when this type of error is preserved, it must always cause the conviction to be reversed. *Burnett's* reasoning was based on the fundamental nature of one's right to a unanimous verdict.

While holding true to that underlying principle, we now step back from our position in *Burnett* because the error resulting only from superfluous language does not present a pure unanimity problem. On the contrary, such flawed instructions only implicate unanimity if it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in reaching their verdict. If that can be shown, then a unanimous verdict has been denied and the verdict must be overruled. However, if there is no reasonable possibility that the jury actually relied on the erroneous theory—in particular, where there is no evidence of the theory that could mislead the jury—then there is no unanimity problem. Though such a case presents an error in the instructions, namely, the inclusion of surplus language, the error is simply harmless because there is no reason to think the jury was misled. To the extent *Burnett* mandates reversal in this latter situation, it is now overruled.

Turning back to the case at hand, there was absolutely no evidence to support the two erroneous theories in Travis's and Dawson's PFO instructions. Thus, there was no reason at all for any juror to convict either of them as a PFO under those erroneous theories. To do so would have been utterly

12

irrational. As such, there is no real possibility that jurors followed one of the theories presented by the surplus language and, as a result, no real possibility that a unanimous verdict was denied. Thus, even if these instructional errors had been properly preserved for review, they would likely be deemed harmless. Having not been preserved, and subject only to palpable error review, reversal is certainly not warranted under that higher threshold.

### III. Conclusion

The judgment of the Jefferson Circuit Court is hereby affirmed as to both Appellants' convictions for first-degree robbery and as persistent felony offenders, but reversed as to the portion thereof imposing fines and remanded for an entry of judgment consistent with this opinion.

Cunningham, Scott and Venters, JJ., concur. Minton, C.J., concurs in result only by separate opinion. Abramson, J., concurs in result only by separate opinion. Schroder, J., concurs in result only.

MINTON, C.J., CONCURRING IN RESULT ONLY: I agree with the majority that the error in this case is not sufficiently egregious to rise to the level of being a palpable error. But I believe the majority goes afield by concluding that this type of surplus language in an instruction would be harmless error if it had been properly preserved. Obviously, that conclusion is dicta because the jury instruction issue in question clearly was not preserved for review. Unfortunately, the majority relies upon that dicta to overrule *Burnett*,[2] a decision that would mandate reversal if this type of issue were properly preserved. Maybe *Burnett* should be re-examined, but this is not the

---

[2] *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky. 2000).

13

case for it. Simply put, *Burnett*'s viability is not squarely before us; and I am reluctant to use dicta to overrule precedent.

By overruling *Burnett*, the majority ostensibly has concluded that lay jurors would always be wise enough to ignore any superfluous instruction the judge might give. It appears to me that such a conclusion rests upon the dubious proposition that lay jurors have a greater degree of discernment about the evidence presented at trial than do the judges who draw the instructions. After all, an instruction deemed superfluous by the appellate court would not have been submitted to the jury unless the trial judge believed the instruction was necessary and proper. So I am unable to join the majority's view that a lay juror — mindful of their oath to follow both the evidence and the law as given to them by the trial court — could identify a superfluous instruction and disregard it.

In addition to being unnecessary to the resolution of the case at hand, the majority's mixing the language of harmless error analysis into this case runs afoul of *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2007). The majority in *Martin* exhorts appellate courts to "endeavor to avoid mixing the concepts of palpable error and harmless error. One is not the opposite of the other." *Id.* at 5. I fear we have failed to follow our own advice by injecting the concept of harmless error into this palpable error case.

Finally, neither a party nor a judge can invade the sanctity of the jury room to determine what arguments or theories any individual juror relied upon in rendering a verdict. So I believe the majority requires an Appellant to complete an insuperable task when it holds that an extraneous instruction can

14

only be palpable error if an Appellant can show that "it is reasonably likely that some members of the jury actually followed the erroneously inserted theory in reaching their verdict." Slip opinion, p. 12. In practical terms, I believe the majority opinion will stand for the proposition that an Appellant will not be entitled to palpable error relief if he or she fails to object timely to a superfluous instruction, such as the one at hand. Instead of requiring the impossible from Appellants, I would prefer to analyze these types of cases under our traditional, well-settled standards for conducting palpable error review.

Since I do not believe *Burnett*'s viability is necessarily at stake in this case and because I do not believe we should gratuitously address what relief, if any, Travis and Dawson would be entitled to receive if they had properly preserved this unanimity issue, I only concur with the majority's conclusion that the instructional errors did not rise to the level of palpable error in this case. I do not join the majority's overruling of *Burnett*. Because I cannot subscribe to all aspects of the majority opinion, I respectfully concur in result only.

ABRAMSON, J., CONCURRING: I concur with Justice Noble's cogent analysis but write separately to explain some of my own conclusions about so-called unanimous verdict cases involving superfluous or overly broad language in the jury instructions. Trial judges should not knowingly submit jury instructions that are overly broad, but such instructions generally do not implicate the constitutional right to a unanimous verdict and thus would not

15

constitute palpable error under the high standard adopted by this Court in *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2007).

In *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008), this Court concluded that it was palpable error for a trial judge, in a case where the defendant was charged with multiple instances of conduct constituting the same criminal offense, to issue jury instructions containing no specific, distinguishing factors, *i.e.*, a series of identically-worded instructions. *Harp*, like most of the cases in which that particular instructional error arises, involved a young sexual abuse victim who could not remember precise dates but could testify to other facts surrounding each specific occurrence, thus allowing for instructions tailored to each occurrence. In *Harp*-type cases, the distinguishing factors among several instances of the same type of criminal conduct can include a myriad of things such as where the particular offense occurred, when it occurred in relation to some event in the victim's life such as a birthday or school event, whether someone walked in on the event, how the victim or perpetrator was clothed as the time and whether the perpetrator made a specific comment or threat. In *Harp*, we urged trial courts to look carefully at the proof and craft instructions which would guide appropriately the ensuing jury deliberations, assuring that all jurors were focused on one specific instance about which they had heard evidence and that when they voted they were considering whether that particular instance of alleged criminal conduct had been proven beyond a reasonable doubt. Given the confusion which would flow from undifferentiated instructions, there was no

difficulty in concluding that the identically-worded instructions in such cases can easily lead to a non-unanimous verdict and constitute palpable error.

The case before us presents a different problem. Instead of imprecise instructions that muddy the waters, we have very precise instructions that conform to the applicable law but are overly broad. The jury, in essence, is being "over-instructed" because they are given instructions that cover, yet go beyond, the case which they have just heard. The specific problem in these cases is there is no evidence whatsoever to support some portion of the instruction. Thus in this case there is no proof to support, for either of the two defendants, at least two of the ways in which one can attain persistent-felony offender status.

In *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky. 2000), this Court concluded that an instruction on trafficking that contained superfluous language regarding possession of cocaine with intent to manufacture was unsupported by any evidence and interfered with the defendant's right to a unanimous verdict. Finding the error adequately preserved, the Court concluded in a 4-3 decision that because of the constitutional requirement of a unanimous verdict, harmless error analysis did not apply. Realistically, where there is no evidence whatsoever to support the overly broad language, there is no real prospect of a non-unanimous verdict, regardless of whether the error is preserved or unpreserved. See *Burnett*, 31 S.W.3d at 884-85 (J. Graves dissenting) ("The total lack of evidence supporting an alternate theory does not require reversal.") Thus, our holding today undermines *Burnett's* conclusion that harmless error analysis cannot apply due to a unanimous verdict

violation. The immediate question before us, however, is whether, where the error is unpreserved, overly broad instructions result in palpable error.

In *Martin, supra,* this Court went beyond the language of Kentucky Rule of Criminal Procedure (RCr) 10.26 to amplify the palpable error standard with language drawn from the federal cases, particularly *United States v. Cotton,* 535 U.S. 625 (2002), a case in which the United States Supreme Court found no plain error where the indictment failed to set forth a necessary element of the offense, *i.e.,* the quantity of drugs. The *Cotton* Court applied the four-step test adopted in *United States v. Olano,* 507 U.S. 725 (1999) which requires (1) error (2) that is plain and that (3) affects substantial rights. Even if those three factors are present, relief is available only if (4) the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 732. Chief Justice Rehnquist, writing for a unanimous Supreme Court in *Cotton,* concluded that the omission did not satisfy the fourth element of the *Olano* test. In his words, "the real threat to the 'fairness, integrity, or public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id.* at 1783.

While federal cases regarding "plain error", the federal counterpart to our palpable error, are not binding on us and this Court is free to make its own determinations regarding palpable error in Kentucky, the federal cases applying plain error analysis are worth consideration, particularly given that

federal law is the origin of the "fairness, integrity or public reputation of judicial proceedings" language adopted by this Court in *Martin*. In federal cases, jury instructions that omit an element of the crime can constitute plain error. *See., e.g., United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998) (plain error in mail fraud case where instruction omitted language and posed "genuine risk" that jury could find guilt even if it believed defendant did not contemplate or intend to harm the victim); *United States v. Haywood*, 363 F.3d 200 (3d Cir. 2004) (failure to instruct jury that knowledge of obliterated serial number was element of crime of possession of firearm with obliterated serial number was plain error). *But see United States v. Feliciano*, 223 F.3d 102 (2d Cir. 2000) (even if trial court committed plain error in failing to instruct jury on elements of narcotics conspiracy and even if that affected defendant's substantial rights, no relief because of the abundant evidence in the record that defendants engaged in extensive drug trafficking; under these circumstances, omission, if any, could not seriously affect the fairness, integrity or public reputation of judicial proceedings). Similarly, plain error can occur when the jury is not instructed that it can only convict on one of two offenses. *See, e.g., United States v. Brown*, 996 F.2d 1049 (10th Cir. 1993) (plain error where jury was not instructed that it could not convict defendant of both theft of goods in interstate commerce and possession of those same goods).

My research reveals only one case where jury instructions were deemed plain error because of the potential for a non-unanimous verdict but, significantly, the instructions were not overly broad; rather, they failed to

19

contain the requisite detail under federal jury instruction standards. In *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998), following a five-month bank fraud trial in which the court committed numerous reversible errors, the judge then submitted jury instructions which did not identify the particulars of the scheme to defraud on which the defendants were being prosecuted. Because the jury heard evidence of 227 different overt acts and it was impossible to know which of those acts the various jurors focused on in finding a scheme to defraud, the Eleventh Circuit Court of Appeals found that the defendants' rights to a unanimous verdict were violated and that constituted plain error.[3]

By contrast, several courts have concluded that overly broad jury instructions do *not* constitute plain error. *See, e.g., United States v. Leahy*, 445 F.3d 634, 655 (3d Cir. 2006) (no plain error in giving "intangible property rights" jury instruction in bank fraud prosecution when the government did not present any evidence supporting such instruction or allege an "intangible rights" theory because error did not prejudice defendants or diminish their rights; single erroneous jury instruction, could not have been "possible basis for the jury's verdict" where financial fraud was also instructed on and evidence supported that theory); *United States v. Newsom*, 452 F.3d 593 (6th Cir. 2006) (no plain error in overbroad jury instruction regarding uses that could be made of FRE 404(b) evidence because one of the four means of using 404(b) ( to prove intent) was supported by the evidence); *United States v. Hall*, 312 F.3d 1250 (11th Cir. 2002) (in prosecution for distribution and receipt of

---

[3] *Adkinson* is obviously analogous to our decision in *Harp*, 266 S.W.3d at 813.

20

child pornography by computer through interstate or foreign commerce, instruction requiring a visual depiction which is, "or appears to be," of a minor engaging in sexually explicit conduct was plain error, but the error did not affect defendant's substantial rights and affirming the conviction would not seriously affect the fairness, integrity or public reputation of judicial proceedings; the evidence established that the children depicted in the pictures admitted at trial were actual children and no one ever claimed, or even hinted, that the images were of virtual children).

In this case, the excess language in the jury instructions regarding ways in which one can attain persistent felony offender status was error but not palpable error for much the same reason there was no plain error in the above-cited federal cases: the jurors would have to conjure up evidence to arrive at a verdict based on the excess language. As the United States Court of Appeals for the Third Circuit noted in *Leahy, supra,* the excess language regarding a theory unsupported by the evidence could not have been "a possible basis for the jury's verdict." 445 F.3d at 665. This, of course, distinguishes this type of case from the *Harp*-type case where the failure to give incident-specific instructions creates significant confusion about the basis or bases for the jury's verdicts.

Moreover, for those who believe that jurors might be sufficiently confused by overly broad instructions that the jury would somehow "rely" on evidence that does not exist, I would further suggest that the "fairness, integrity or public reputation of judicial proceedings" is not impugned by such overly broad instructions. Where there is sufficient proof for a theory or theories properly

21

included in the instruction(s), the additional presence of a theory in the instructions unsupported by any evidence does not alter that first fact; in other words, there is still sufficient evidence of a criminal act and the fairness, integrity and public confidence in the proceeding is not undermined by excess language even if the jury could have, in some extraordinarily strained, highly unlikely way misused that language. On this score, I would echo Chief Justice Rehnquist's words for a unanimous Supreme Court in *Cotton* quoted *supra, albeit* in a different context. The real threat to fairness, integrity and public opinion of these particular proceedings would come from overturning a verdict, where the instructions were sufficiently specific and the evidence was sufficient for conviction, based on a unanimous verdict theory that requires us to assume wholly implausible, if not completely irrational, behavior on the part of a juror or jurors.

COUNSEL FOR APPELLANT, ZELNAR TRAVIS:

Daniel T. Goyette
Louisville Metro Public Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, Kentucky 40202

Annie O'Connell
Assistant Appellate Defender
Office of the Louisville Metro Public Defender
200 Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202

COUNSEL FOR APPELLANT, WILLIAM DAWSON:

Daniel T. Goyette
Louisville Metro Public Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, Kentucky 40202

Cicely Jaracz Lambert
Assistant Appellate Defender
Office of the Louisville Metro Public Defender
717-719 West Jefferson Street
Louisville, Kentucky 40202

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Jeffrey Allan Cross
Criminal Appellate Division
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601