RENDERED: DECEMBER 6, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0137-MR

ALEXANDER MORGAN                                         APPELLANT

v.            APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE LARRY ASHLOCK, JUDGE
ACTION NO. 22-CR-00209

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND L. JONES, JUDGES.

COMBS, JUDGE: In this criminal appeal, Appellant, Alexander Morgan

(Morgan), challenges the revocation of his pretrial diversion. After our review, we

affirm in part, vacate in part, and remand.

Morgan was arrested on January 22, 2022. He was traveling south on

Dixie Highway in Hardin County with no visible registration plate. When a police

officer attempted to catch up to Morgan, he sped up and ran a red light. The officer initiated pursuit with activated lights and sirens. Morgan failed to stop, and a high-speed chase ensued.  According to the citation:

> [Morgan] continued to flee at high rates of speed for approximately 30 minutes through Hardin, LaRue, and Nelson Counties. . . .  [Morgan] came to a brief stop when cornered and troopers approached on foot. [Morgan] then drove off-road . . . to elude police and caused two troopers to fall to the ground . . . .  [Morgan] traveled at radar indicated 110 mph in the opposing lanes of Lincoln Parkway, nearly striking several civilian vehicles head on.  While going the wrong way, [Morgan] "lane split" between two oncoming vehicles and then made an improper U-turn . . . .  [Morgan] lost control of the motorcycle . . . went off the roadway, and struck a wood fence before falling off of the motorcycle. [Morgan] then crawled away from police despite . . . commands to stop . . . .  While being detained, [Morgan] struck [a trooper] in the mouth. . . . .  [Morgan] . . . was unable to produce an insurance card . . . [or] a license. . . . Dispatch advised operator's license status is suspended . . . .

In March 2022, Morgan waived indictment and entered into a pretrial diversion agreement with the Commonwealth.  He pleaded guilty to one count of First-Degree Fleeing/Evading Police (motor vehicle) with a five-year sentence and one count of First-Degree Wanton Endangerment with a three-year sentence -- to run consecutively for a total of eight years.  Morgan was to serve 215 days, be referred to drug and/or mental health court programs, and be subject to a five-year diversionary period without the possibility of early termination.

An agreed order entered on April 26, 2022, reflects that Morgan had been scheduled with Communicare for a mental health diagnosis. He was released from custody and was ordered to report to probation and parole in Elizabethtown within 24 hours of his release. By order of admission entered on May 26, 2022, Morgan was accepted into mental health court. However, that experience was short-lived.

A "Specialty Court Notice of Violations and Termination" was entered on July 21, 2022, reflecting that Morgan was terminated from mental health court for non-compliance. Probation and Parole filed a report of violation of supervision on August 1, 2022, recommending revocation of pretrial diversion.

On August 9, 2022, the Commonwealth filed a motion to void pretrial diversion, and on August 16, 2022, the trial court conducted a hearing on the motion. By Order entered on August 22, 2022, the trial court found that Morgan had failed to abide by the terms and conditions of pretrial diversion by committing the following violations: "termination from mental health court (8 missed screens & 2 positive for THC) and derogatory comments directed towards staff." The court then considered the requirements of KRS[1] 439.3106, and found that sanctions other than voiding diversion were appropriate. It referred Morgan to Pretrial Substance Abuse Program (PSAP), which he had requested.

---

[1] Kentucky Revised Statutes.

-3-

However, Morgan was ineligible for PSAP. The trial court re-referred Morgan to mental health court, but he was not accepted back. Ultimately, Morgan was accepted into the residential recovery program at the Healing Place. The record below includes correspondence from the Healing Place, which reflects that it is a six-to-nine-month recovery program and that Morgan was scheduled for intake on November 7, 2022.

By Order entered on November 4, 2022, the trial court ordered Morgan to be released from Hardin County Detention Center to a Hardin County sheriff's deputy on November 7, 2022, and to report to the Healing Place in Campbellsville for residential treatment. The court further ordered Morgan "to complete any and all requirements and follow all rules of The Healing Place while in residence there." The Healing Place was directed to send reports of Morgan's progress and compliance to Hardin County Probation and Parole. Furthermore, if Morgan failed to comply with the rules of the program, he would be placed in custody and returned to the Hardin County detention center until further orders of the court.

As will be discussed below, it is uncontroverted that the Healing Place terminated Morgan about a week after he arrived -- notwithstanding some apparent confusion about where Morgan had gone for treatment.

On March 23, 2023, Hardin County Probation and Parole Officer Cody Hillock filed a violation of supervision report. According to that report, on November 7, 2022, Morgan had gone to Lighthouse to start treatment. Morgan was to report to the Probation and Parole office on February 13, 2023, but he failed to do so. When Officer Hillock contacted Lighthouse on March 9, 2023, he was advised that Morgan had left a couple of weeks before. Officer Hillock requested that Nelson County Probation and Parole conduct a home visit at 1389 New Hope Road, New Haven, Kentucky, since the address was in Nelson County. Nelson County officers advised that Morgan no longer lived there and that he had been "kicked out" by his mother a few weeks earlier. Officer Hillock requested that a warrant be issued because Morgan's whereabouts were unknown.

On October 24, 2023, Morgan was arrested on a bench warrant.

On October 31, 2023, the Commonwealth again filed a motion to void Morgan's pretrial diversion. On November 14, 2023, the trial court conducted a hearing on the Commonwealth's motion. Officer Hillock testified essentially along the lines of his report.[2]

Morgan introduced evidence that he had not attended Lighthouse. He testified that he was transferred from Hardin County Detention Center to the

---

[2] In its brief, the Commonwealth acknowledges that the report contains incorrect or contradictory information about where Morgan went for treatment.

Healing Place. Morgan admitted that he did not complete treatment at the Healing Place. He testified that he was there for a week before he was terminated due to a misunderstanding about vaping and cigarette smoking. He got "kicked out." After that, Morgan was living in New Haven, Kentucky, on New Hope Road -- but across the street from 1389 New Hope Road, his previous address. Morgan testified that he did not know who his probation officer was after he moved back to New Haven.

At the end of the hearing, the trial court asked defense counsel what her position was. Defense counsel explained that the violation was based upon Morgan's leaving Lighthouse -- but that he was not treated there. Due to confusion and inconsistencies in the report, defense counsel requested a lesser sanction -- perhaps a 30-day or 60-day sanction in jail.

The Commonwealth responded that it did not know what happened at Lighthouse -- but that Morgan had admitted on the record that he did not complete treatment at the Healing Place, that he was terminated after approximately a week, and that he had not reported to Probation and Parole.

The trial court advised that it was going to revoke pretrial diversion. The court explained that Morgan was initially looking at 20 years pursuant to the citations. The court summarized Morgan's history in brief in its remarks. He had received a deal, received eight years, and then squandered his pretrial diversion.

Morgan had already been given another chance after violating pretrial diversion the first time.  He knew better.  He knew that he had to complete long-term treatment -- just as he knew he had to complete mental health court; there was no gray area.

By Order entered on November 21, 2023, the trial court voided Morgan's pretrial diversion. The court found that Morgan had failed to abide by the terms and conditions of pretrial diversion by "absconding supervision" and that:

> The Defendant was afforded the opportunity for a hearing pursuant to KRS 533.050. In determining whether to void the Defendant's pretrial diversion or to assess a penalty or conditions other than revocation, the Court has considered the requirements of KRS 439.3106 and finds:
>
> √ such violation(s) constitute a significant risk to √ prior victims of the Defendant or √ the community at large (including the Defendant) and cannot be appropriately managed in the community.
>
> Absconding supervision after repeated violation of PTD, even given the chance of MHC, which was unsuccessful, coupled with the seriousness of the underlying offenses, makes D a danger to the victims of that crime as well as the community. Repeated failures and absconding makes it impossible to manage in the community.

A sentencing hearing was scheduled for December 5, 2023.  On January 5, 2024, the trial court entered Judgment and Sentence on Plea of Guilty and sentenced Morgan to imprisonment for a maximum term of 8 (eight) years. The Court also ordered as follows:

[P]ursuant to KRS 441.265 and KRS 532.356 to reimburse costs & fees of incarceration in the amount of record with the Hardin County Jailer as of the date of sentencing. The Court takes judicial notice of Hardin County Fiscal Court Resolution 2005-063 and its successor resolutions authorizing and adjusting such costs and fees.

Morgan appeals. His first argument is that the trial court abused its discretion when it voided his pretrial diversion. "We review the circuit court's decision to void pretrial diversion for abuse of discretion." *Compise v. Commonwealth*, 597 S.W.3d 175, 180 (Ky. App. 2020).

> The trial court abuses its discretion only when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. Put another way, we will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law.

*McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015) (internal quotation marks and citations omitted).

KRS 533.256(2) provides in relevant part that "[i]n making a determination as to whether or not a pretrial diversion agreement should be voided, the court shall use the same criteria as for the revocation of probation . . . ."

> [KRS] 439.3106(1)(a) requires a court to make two findings before revoking probation: 1) the supervised individual must be "a significant risk to prior victims . . . or the community at large"; and 2) the supervised individual "cannot be appropriately managed in the community[.]" A court must make both findings before

revoking probation but retains the discretion to choose whether to revoke probation or impose lesser sanctions.

. . .

[The trial] court is only required to make the statutory findings, not explain them.

*Kendrick v. Commonwealth*, 664 S.W.3d 731, 734 (Ky. App. 2023).

Morgan's argument amounts to a series of anemic excuses rather than viable explanations of his conduct. Morgan contends that he could not have absconded from supervision because he was not aware that Officer Hillock was supervising him. He contends that the available treatment options were not the "right fit," and so it was not his fault that that the "court tried forcing a square peg into a round hole." Morgan also contends that he cannot be blamed for Probation and Parole's not knowing where he was when there was a court order sending him to the Healing Place. Morgan ignores the fact that the same order also directed him "to complete any and all requirements and follow all rules of The Healing Place," noting that if he failed to do so, "he would be placed in custody and returned to the Hardin County Detention Center until further orders of the court." Instead, Morgan got "kicked out" of the Healing Place after a week and absconded to Nelson County.

The trial court made the two requisite findings under KRS 439.3106(1)(a) and determined that Morgan's absconding supervision after

repeated violations of pre-trial diversion -- coupled with the serious nature of the underlying offenses -- made him a danger to the community and that his repeated failures and absconding made him unmanageable in the community. We are satisfied from our review that the trial court's findings are amply supported by the substantial evidence of record. We find no abuse of discretion, and we affirm the Order voiding Morgan's pretrial diversion.

Next, Morgan argues that the trial court abused its discretion in not granting probation or an alternate service sentence.

> Kentucky statutory law affords trial courts immense discretion in setting criminal penalties. . . . [T]rial courts retain discretion . . . in granting or denying probation . . . . Kentucky law does require trial courts to consider certain factors. . . . But because such decisions are ultimately committed to the trial court's sound discretion, we review these rulings for an abuse of discretion.

*Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016) (footnotes omitted).

RCr[3] 11.02 **requires** the court to "consider the possibility of probation . . . ." KRS 533.010 provides in relevant part:

> (2) Before imposition of a sentence of imprisonment, the court shall consider probation, probation with an alternative sentencing plan, or conditional discharge. Unless the defendant is a violent felon as defined in KRS 439.3401 or a statute prohibits probation, shock probation, or conditional discharge, after due consideration of the defendant's risk and needs

---

[3] Kentucky Rules of Criminal Procedure.

assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation or conditional discharge shall be granted, unless the court is of the opinion that imprisonment is necessary for protection of the public because:

    (a) There is substantial risk that during a period of probation or conditional discharge the defendant will commit another crime;

    (b) The defendant is in need of correctional treatment that can be provided most effectively by his commitment to a correctional institution; or

    (c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

(3) In the event the court determines that probation is not appropriate after due consideration of the defendant's risk and needs assessment, nature and circumstances of the crime, and the history, character, and condition of the defendant, probation with an alternative sentencing plan shall be granted unless the court is of the opinion that imprisonment is necessary for the protection of the public because:

    (a) There is a likelihood that during a period of probation with an alternative sentencing plan or conditional discharge the defendant will commit a Class D or Class C felony or a substantial risk that the defendant will commit a Class B or Class A felony;

    (b) The defendant is in need of correctional treatment that can be provided most effectively by commitment to a correctional institution; or

(c) A disposition under this chapter will unduly depreciate the seriousness of the defendant's crime.

Morgan contends that the trial court did not offer sufficient reasons to deny probation and that it also failed to consider the impact of the sentence on his future criminal behavior as required by KRS 532.007(3)(b) (requiring sentencing judges to consider the "[t]he likely impact of a potential sentence on the reduction of the defendant's potential future criminal behavior[.]").

We disagree. At the December 5, 2023, sentencing hearing, the court wanted to know what was going to be different this time -- asking for something concrete in nature. It gave defense counsel one week to furnish information about any treatment possibilities that it might order. In its January 5, 2024, Judgment and Sentence on Plea of Guilty, the trial court stated that:

> Having given due consideration to the PSI prepared by the Division of Probation and Parole, and to the nature and circumstances of the crime, as well as the history, character and condition of Defendant, and any matters presented to the Court by the Defendant (or counsel, if any), the Court finds:
>
> (X) imprisonment is necessary for the protection of the public because:
>
> (X) there is a likelihood that during a period of probation with an alternate sentencing plan or conditional discharge, Defendant will commit a Class D or Class C felony. or a substantial risk that Defendant will commit a Class B or Class A felony.

(X)Defendant is in need of correctional treatment that can be provided most effectively by the Defendant's commitment to a correctional institution.

We are satisfied from our review of the record that the trial court properly considered the appropriate statutory factors and that it made the necessary findings of fact which are supported by the substantial evidence of record. We find no abuse of discretion.

Morgan's final argument is that the trial court erred in levying jail fees. In relevant part, KRS 441.265(2)(a) provides that "[t]he jailer may adopt, with the approval of the county's governing body, a prisoner fee and expense reimbursement policy . . . ."

Morgan explains that the trial court previously acknowledged his indigent status and that there had been no discussion of jail fees during the sentencing hearing. With respect to the Hardin County Fiscal Court Resolutions, of which the court took judicial notice, there was no evidence as to what those resolutions were -- nor was there any request for or discussion of judicial notice.[4]

Morgan relies upon *Capstraw v. Commonwealth*, 641 S.W.3d 148 (Ky. 2022), in which the sentencing order required the defendant to reimburse

---

[4] *See R. v. J.N.*, 307 S.W.3d 631, 637 (Ky. App. 2010) ("[Kentucky Rule of Evidence] 201(e) requires a court to give the parties notice of its intention to take judicial notice of any matter and 'an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.'").

costs and fees in the amount of record with the jailer as of the date of sentencing. The defendant argued that this order was erroneous because there was no evidence of record that the jailer had ever adopted a jail fee reimbursement policy.

As in the case before us, the defendant in *Capstraw* acknowledged that the error was not properly preserved. "'Nonetheless, since sentencing is jurisdictional it cannot be waived by failure to object. Thus, sentencing issues may be raised for the first time on appeal[.]'" *Capstraw*, 641 S.W.3d at 161 (quoting *Travis v. Commonwealth*, 327 S.W.3d 456, 459 (Ky. 2010)). Our Supreme Court acknowledged several unpublished cases vacating the imposition of jail fees where there was no evidence that a jail fee reimbursement policy had been adopted by the jailer with the approval of the county's governing body. The Supreme Court held as follows:

> With our published opinion today, we reiterate our holding in *Weatherly*[5] and emphasize that in order to impose jail fees against a criminal defendant during sentencing, there must be some evidence presented that a jail fee reimbursement policy has been adopted by the county jailer with approval of the county's governing body in accordance with KRS 441.265(2)(a).
>
> Consequently, because there was no such evidence presented during Capstraw's sentencing, the jail fees imposed against him must be vacated.

---

[5] *Weatherly v. Commonwealth*, No. 2017-SC-000522-MR, 2018 WL 4628570 (Ky. Sep. 27, 2018).

*Id.* at 161-62 (footnote omitted).

The Commonwealth agrees that the issue of jail fees was not addressed at the sentencing hearing and that the Hardin County Fiscal Court Resolution, of which the trial court took judicial notice, "isn't in the court record and apparently isn't available on line."

Accordingly, we affirm Morgan's sentence, but we vacate that portion of the judgment in which jail fees were imposed against him. We remand for entry of an order consistent with our holding as to the fees.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kayley V. Barnes
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky